UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PHILIP FLOYD, | § | |
| Plaintiff | § | |
| vs. | § | |
| | § | CIVIL ACTION NO. 4:24-CV-00681 |
| ANDREA K. BOURESSA, *In her official* | § | |
| *capacity as a State of Texas District Court* | § | |
| *Judge for Collin County, Texas*, Et al | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO JUDGE BOURESSA'S MOTION TO DISMISS

TO THE HONORABLE AMOS L. MAZZANT, III:

COMES NOW, Philip Floyd and files this response to Judge Bouressa's Motion to

Dismiss and shows this Court as follows:

Plaintiff's Complaint contains two separate and distinct counts.  The Motion to Dismiss

mixes the two counts in an attempt to confuse the issues.  I am reminded by the article "Some

Kind of Hearing," the famous Judge Henry Friendly provides a list of due process elements for a

fair hearing.  Judge Friendly's list remains highly persuasive to this day. The items on the list are

as follows:

ITEM 1.    A neutral and unbiased tribunal.
ITEM 2.    A notice of the government's intended action and the asserted grounds for it.
ITEM 3.    The opportunity for the individual to present the reasons why the government
           should not move forward with the intended action.
ITEM 4.    The right for the individual to present evidence, including the right to call a
           witness.
ITEM 5.    The right for the individual to see the opposing side's evidence.
ITEM 6.    The right to cross-examination of the opposition's witnesses.
ITEM 7.    A decision based exclusively on the evidence presented.
ITEM 8.    The opportunity to representation by counsel.
ITEM 9.    The requirement that the tribunal prepare a record of the evidence presented.
ITEM 10.   Requirement that the tribunal prepare written findings of fact and reasons for its
           decision.

Attached hereto as ==Exhibit== 1 (==Reporter's Record, Vol. 4 of 5, dated August 1, 2022==) is the entire Reporter's Record for the August 1, 2022 hearing.  The Record clearly shows that as to Judge Friendly's list:

> ITEM 4:  Defendant Bouressa adamantly refused to allow Plaintiff to  present evidence, including the right to call a witness;

> ITEM 5:  Defendant Bouressa did not require the movants to produce any evidence before ruling;

> ITEM 6:  Defendant Bouressa did not require movants to produce any witnesses;

> ITEM 7:  Defendant Bouressa's decision could not be based exclusively on the evidence presented, because no evidence was presented;

> ITEM 9: The Reporter's Record shows no evidence was presented on August 1, 2022; and

> ITEM 10:  Defendant Bouressa's findings of fact are unsupported by the Reporter's Record, and are a fabrication.

The Finding of Facts and Conclusions of Law filed by Defendant Bouressa are attached hereto as ==Exhibit== 2.

Defendant Bouressa claim on page 10, paragraph E, attempts to divert attention form the two separate Counts in the Complaint.  As to Count 1, Plaintiff has clearly stated with specificity that Defendant Bouressa violated Plaintiff's procedural due process rights under the 14th Amendment of the U.S. Constitution.  Defendant Bouressa goes on to misstate a vital fact, "A judge presiding over contested litigation and ruling for one party instead of another is not a Constitutional violation."  It is true that the issues were contested, but the refusal by Defendant Bouressa to require any evidence by the moving party and the refusal by Defendant Bouressa to allow Plaintiff to testify is a Constitutional violation of Plaintiff's civil rights.

As to Defendant's allegation that this Court lacks subject matter jurisdiction (F.R.C.P

Rule 12 (b)(1)) of a case alleging 14th Amendment to the U.S. Constitution violation of Plaintiff's right to procedural due process and under 42 U.S.C. 1982, Defendant is simply mistaken.

As to Defendant's allegation that Plaintiff's Complaint Count 1 and Count 2 fail to state a claim upon which relief can be granted (F.R.C.P Rule 12 (b)(6)) Defendant is simply mistaken, because the claims set forth in Count 1 and Count 2 clearly state claims alleging violation of Plaintiff's right to procedural due process and under the 14th Amendment to the U.S. Constitution and under 42 U.S.C. 1982.

## COUNT 1:

Count 1 is a straight forward 14th Amendment to the U.S. Constitution violation of Plaintiff's right to procedural due process that shows that Defendant Bouressa refused to require movants to put on any evidence and refused to allow Plaintiff to present any evidence at the hearing on August 1, 2022.  Defendant Bouressa states that Plaintiff's claims against her are based solely on her judicial decisions in the state court proceedings in the 471st District Court in Collin County is misleading.  Plaintiff's claim is that there is not a scintilla of evidence to support the judgment against Plaintiff finding that he owes $1,400,340.08, attached hereto as Exhibit 3.  Accordingly, Plaintiff seeks equitable or declaratory relief.

Defendant Bouressa asserts an Eleventh Amendment Claim citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984).   Plaintiff cites to *Scham v. District Courts Trying Criminal Cases*, 967 F.Supp. 230 (S.D. Tex. 1997) Defendant Bouressa reliance on *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984), that the Eleventh Amendment bars this Court from reviewing the state-law claims is misplaced.

**PLAINTIFF'S RESPONSE TO JUDGE BOURESSA'S MOTION TO DISMISS**
**PAGE 3**

See *Scham* at 232, 233, where the court stated:

The *Pennhurst* Court noted, however, that a federal court may review an action against a state officer acting ultra vires.5 Id.  at 102 n. 11, 104 S.Ct. at 908 n. 11; *Word of Faith World Outreach Ctr. Church, Inc. v. Morales,* 986 F.2d 962, 966 (5th Cir.), *cert. denied,* 510 U.S. 823, 114 S.Ct. 82, 126 L.Ed.2d 50 (1993). A state officer acts ultra vires when he acts beyond the scope of his statutory authority, or pursuant to authority deemed to be unconstitutional. *Word of Faith,* 986 F.2d at 966; *see also Pennhurst,* 465 U.S. at 102 n. 11, 104 S.Ct. at 908 n. 11 (quoting *Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 697, 102 S.Ct. 3304, 3321, 73 L.Ed.2d 1057 (1982)) (ultra vires is acting "`without any authority whatever'").

It is a well-settled doctrine of constitutional law that a court should not reach out and decide difficult questions of federal constitutional law if these questions can be avoided by a decision based on state law. *Siler v. Louisville & Nashville R.R. Co.,* 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909); *Crane v. Texas,* 759 F.2d 412, 422-23 (5th Cir.), *modified in part on other grounds,* 766 F.2d 193 (5th Cir.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985); *Peltier v. Assumption Parish Police Jury,* 638 F.2d 21, 22 (5th Cir.1981).

Count 1, points out that Defendant Bouressa's August 1, 2022 judgment is clearly

unconstitutional and she also failed to follow state law, specifically the Texas Supreme Court

ruling in *City of Keller v. Wilson*, 168 S.W.3d 802.  This court can decide Count 1 on Texas law

alone.

Also see *Crane v. Texas*, 759 F.2d 412 (5th Cir. 1985) holding;

The defendant judges of the Dallas County Criminal Courts joined with Dallas County in claiming entitlement to Eleventh Amendment immunity. Insofar as they sought to derive such immunity from the County, their claim must plainly fail with that of the County. Monell, 436 U.S. at 690 n. 55, 98 S. Ct. at 2035 n. 55. The judges also contend that they are not "persons" under Sec. 1983. The Supreme Court's recent decision in Pulliam v. Allen, 466 U.S. 522, 104 S. Ct. 1970, 80 L. Ed. 2d 565 (1984), settles this question. In Pulliam, an action brought under Sec. 1983, the Court held that judicial immunity bars neither prospective injunctive relief nor the award of attorneys' fees under Sec. 1988. That state judges are "persons" for Sec. 1983 purposes is clearly implicit in this holding. **Further, our own cases establish that state court judges are not immune from federal suits seeking equitable or declaratory relief**. (emphasis added) Ciudadanos Unidos de San Juan v. Hidalgo County Grand Jury Commissioners, 622 F.2d 807, 813 n. 16 (5th Cir. 1980), cert. denied, 450 U.S. 964, 101 S. Ct. 1479, 67 L. Ed. 2d 613 (1981) (Sec. 1983 action against state judges); Sparks v. Duval County Ranch Co., Inc., 604 F.2d 976, 980-81 (5th Cir. 1979) (en banc), aff'd sub nom Dennis v. Sparks, 449 U.S. 24, 101

S. Ct. 183, 66 L. Ed. 2d 185 (1980)

Plaintiff does not seek to enjoin any state court action therefore, Defendant Bouressa's reliance on *Younger v. Harris*, 401 U.S. 37 (1971) is misplaced.  That doctrine applies where the trial court still has jurisdiction of the case and the defendant seeks to enjoin the trial court by appealing to another court for some form of relief that interferes with the trial court's jurisdiction.  Defendant Bouressa lost plenary jurisdiction of Cause No. 471-02423-2021 on or about October 15, 2022.   There is no pending State action in the 471st Judicial District Court of Collin County, Texas and Defendant Bouressa has recused herself from the post judgment collection matter.  A Federal Court has concurrent jurisdiction of as to any federal question that a state court might consider.  Count 1 does not seek any damages against Defendant Bouressa.  Count 1 seeks equitable or declaratory relief from this Court that the judgment entered against Plaintiff by Defendant Bouressa on August 1, 2022 in Cause No. 471-02423-2021 violated Plaintiff's procedural due process rights and said judgment is declared unenforceable as a matter of constitutional law.

Therefore, as to Judge Bouressa's Motion to Dismiss Count 1, under Fed. R. P. 12(b)(1), alleging there is a lack of subject matter jurisdiction makes it obvious that Defendant Bouressa does not understand the propose of the 14th Amendment to the U.S. Constitution and 42 U.S.C. 1983.  As Defendant Bouressa incredulously stated in Exhibit 1, Reporter's Record, Vol. 4 of 5, dated August 1, 2022, p. 25, line 5-7, when Plaintiff wanted to testify;

**THE COURT**: Okay. Was this intended to be an evidentiary hearing, because I did not block out time for an evidentiary hearing?

Counsel for Movant then unequivocally stated;

**MR. HACKNEY**: Your Honor, this was not set as an evidentiary hearing. Mr. Floyd did not set this as a hearing at all. I also would object to an evidentiary hearing.

**PLAINTIFF'S RESPONSE TO JUDGE BOURESSA'S MOTION TO DISMISS PAGE 5**

Both Defendant Bouressa and Defendant Hackney acknowledge on the record by the above statement that no evidence was present at the hearing.  The clear violation of 14th Amendment to the U.S. Constitution confers subject matter jurisdiction under 42 U.S.C. 1983.

Accordingly, the Motion should be denied because as to Count 1, Plaintiff has met the requirements of both  Fed. R. P. 12(b)(1) and (6).  In the alternative, if the Court says Count 1 is not specific enough for Defendant Bouressa to understand the claim that she has violated Plaintiff's constitutionally protected due process rights, Plaintiff should be allowed an opportunity to amend Count 1.  Plaintiff does not seek damages against Defendant Bouressa.  It would be improper to dismiss Plaintiff's 42 U.S.C. 1983 complaint with prejudice.

## COUNT 2:

Count 2 is independent of Count 1 and arises out of the fabrication of evidence by Defendant Bouressa in a conspiracy by Defendant Bouressa with others to cover up the Constitutional violation set forth in Count 1.  In Count 2, Defendant Bouressa is a nominal defendant.  The ultra vires argument in Count 1 is also applicable to Count 2.

It is well established that the fabrication of evidence is a 42 U.S.C. 1983 violation.  See *Napue v. Illinois*, 360 U.S. 264 (1959).  Also, *Barnes v. City of New York*, 68 F. 4th 123 (2d Cir. 2023) makes it perfectly clear that 42 U.S.C. 1983 covers fabricated evidence claims.  See *United States v. Cabrera*, 22 Cr. 10 (NRB) (S.D.N.Y. Mar. 5, 2024); To the extent movants also cite these 42 U.S.C. § 1983 cases to show that the use of fabricated evidence violates a defendant's due process rights, the Court does not dispute that a prosecution based on fabricated evidence can violate due process. See *Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023) (citing *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021)).

That the "evidence" in the findings of fact submitted by Defendant Bouressa is fabricated

is born out by Count 1.  There was no evidence presented on August 1, 2022 to support the judgment.

Count 2 sets forth a rather detailed plan by Defendant Bouressa and Defendants Hackney and Yarborough to file falsified findings of fact and conclusions of law in the Appellate proceeding.  That the filing of falsified documents in a proceeding is also a crime under Texas Criminal law is a motivating factor for the conspiracy to coverup the fabricated evidence. Defendant Bouressa's allegation that Plaintiff is asserting a private cause of action for a criminal violation is also misplaced.  Plaintiff is alleging that the motivating factor for the conspiracy was to coverup the crime of fabrication of evidence.

On or about December 9, 2022, Defendant Bouressa could have acknowledged that there was no evidence to support the August 1, 2022, Judgment.  But she chose to conspire with Defendants Hackney and Yarborough to attempt to mislead the court of appeals by filing the falsified findings of fact and conclusions of law.  Defendant Bouressa intentionally and knowingly chose to file the findings of fact that all three of the conspirators  knew were unsupported by the Reporter's Record.

Civil conspiracy is a claim that can be asserted when multiple defendants combine to do something unlawful to cause damages.   Civil conspiracy is not an independent tort, but rather, a theory of vicarious liability which requires some underlying wrong.  In this case, the underlying wrong was the crime of filing a falsified document in the underlying proceeding for the purpose of misleading the Court of Appeals when there was no evidence in the Reporter's Record to support the judgment.

Civil  conspiracy depends entirely on the injury caused by an underlying tort; the injury is the damage from the underlying wrong, not the conspiracy itself.  *Agar Corporation, Inc. v.*

*Electro Circuits International*, LLC, 580 S.W.3d 136, 141-142 (Tex. 2019).

There are five elements required to prove civil conspiracy: 1) a combination of two or more persons; 2) the persons seek to accomplish an object or course of action; 3) the persons reach a meeting of the minds on the object or course of action; 4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and 5) damages occur as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). The claim requires evidence of a specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). This necessarily requires a meeting of the minds on the object or course of action. *Tri*, 162 S.W.3d at 556 (citing *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). The conspiring parties must be aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996); see also, Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854, 857 (Tex. 1968).

Therefore, to prevail on a civil conspiracy claim, the plaintiff must show a  defendant was liable for some underlying tort.  Id. (citing *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 635 (Tex. 1997)).  Proof of a civil conspiracy may be, and usually must be, made by circumstantial evidence, but vital facts may not be proved by unreasonable inferences from other facts and circumstances.  *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1969).

Count 2 sets forth the vital facts of Plaintiff's 42 U.S.C. 1983 complaint and  the conspiracy case with great specificity.  Once Defendant Bouressa files an answer in the case, she has every right to assert her claim of immunity for damages.  As stated above, the State of Texas

has waived immunity from suits in equity. Defendant Bouressa is not named in the suit for any damages, but she should remain a defendant in the conspiracy case because she is the kingpin of the conspiracy.  If required, Plaintiff will amend the complaint to make it clear that Defendant Bouressa is only being sued as a nominal defendant and co-conspirator and not for damages.

Plaintiff's Count 2 also contains a violation of 42 U.S.C. 1985 (3), conspiracy to interfere with civil rights by depriving persons of rights or privileges which is a private cause of action for the conduct of the of some or all of the conspirators, including Defendant Bouressa.  42 U.S.C. 1985 (3), conspiracy to interfere with civil rights is a Federal cause of action not restricted by any State activity.  If the court permits, Plaintiff will amend the complaint to specifically include the defendants violations of 42 U.S.C. 1985 (3), conspiracy to interfere with civil rights.

Although Defendant Bourassa has immunity against damages, Plaintiff asserts she is still a co-conspirator and she should remain a co-defendant in the conspiracy cause of action because a conspiracy can exist even if a member of the conspiracy has immunity.

## SUMMARY

Defendant Bouressa is asking this Court to apply the law of absurdity to this case.  The plain meaning of the 14th Amendment and the enabling statutes such as 42 U.S.C. 1983 is to give means for individuals to seek justice from wrongful state action that deprives the individual of his civil rights.  To twist the plain meaning of 14th Amendment and the enabling statutes into a law to protect the state actor from any responsibility for her actions by denying the victim of her actions any recourse is the very definition of the law of absurdity.  Statutes are to be liberally interpreted to achieve the intent of the statute.

## PRAYER

Plaintiff prays that the Motion to Dismiss filed by Defendant Bouressa be denied and she

be required to file an answer in this cause as to both counts.

Respectfully submitted,

**/s/ *Douglas T. Floyd***
DOUGLAS T. FLOYD
Attorney for Plaintiff
6521 Preston Rd., Suite 100
Plano, Texas 75024
214-704-7081
877-846-3149 Fax
SBN: 07181700
Lawyerfloyd@aol.com

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a copy of the above Plaintiff's Response to Judge Bouressa's Motion to Dismiss was served on the 30th day of August, 2024, upon all parties who have entered an appearance, using the CM/ECF system.

**/s/ *Douglas T. Floyd***
DOUGLAS T. FLOYD

<u>**AFFIDAVIT AUTHENTICATION DOCUMENTS**</u>

STATE OF TEXAS            }

COUNTY OF COLLIN          }

My name is Douglas T Floyd, I am qualified to make this affidavit. I was legal counsel in the trial court for Plaintiff and counsel in this Court.  Accordingly, I have personal knowledge of the documents filed in the trial court I have examined the original record filed in the trial court and the copies of each and every document in the Exhibits and the Reporter's Record and I swear under penalty of perjury that they are true and correct copies of the originals.

/s/ *Douglas T. Floyd*
DOUGLAS T. FLOYD

<u>**EXHIBITS**</u>

1.    Reporter's Record, Vol. 4 of 5, dated August 1, 2022.
2.    Findings of Fact and Conclusions of Law, December 9, 2022.
3.    Order Confirming Arbitration Award and Final Judgment, August 1, 2022.

```
1                    REPORTER'S RECORD

2                    VOLUME 4 of 5

3               CAUSE NO. 471-02423-2021

4           COURT OF APPEALS NO. 05-22-01147-CV

5

6   PHILIP FLOYD,              )  IN THE DISTRICT COURT
                               )
7         Plaintiff,           )
                               )
8   VS.                        )  471ST JUDICIAL DISTRICT
                               )
9   MMWKM ADVISORS, LLC, and   )
    ELIAS DRAGON,              )
10                             )
          Defendants.          )  COLLIN COUNTY, TEXAS

11

12

13  ********************************************************

14                      HEARING

15                   AUGUST 1, 2022

16  ********************************************************

17

18

19

20

21          On the 1st day of August, 2022, the following

22  proceedings came on to be held in the above-titled and

23  numbered cause before the Honorable Andrea Bouressa,

24  Presiding Judge, in McKinney, Collin County, Texas.

25  Proceedings reported by realtime machine shorthand.
```

Denise Carrillo, CSR, RMR, CRR
Official Court Reporter - 471st District Court

1          **A P P E A R A N C E S**

2     FOR THE PLAINTIFF:

3          MR. DOUGLAS T. FLOYD
           SBOT NO. 07181700
4          6521 Preston Road, Suite 100
           Plano, Texas 75024
5          Phone:  (214)704-7081
           Email: Lawyerfloyd@aol.com
6                  -and-
           MR. CHAD A. NORCROSS
7          SBOT NO. 24039513
           9288 Wichita Trail
8          Frisco, Texas 75033
           Phone:  (214)368-9300
9          Email:  chad.norcross@norcrosslaw.com

10

11    FOR THE DEFENDANTS:

12         MR. RYAN HACKNEY
           SBOT NO. 24069850
13         Ahmad, Zavitsanos & Mensing PC
           1221 McKinney, Suite 2500
14         Houston, Texas 77010
           Phone:  (713)655-1101
15         Email:  rhackney@azalaw.com

16

17

18

19

20

21

22

23

24

25

```
 1                           INDEX

 2                          HEARING

 3    August 1, 2022

 4                                          PAGE   VOL

 5    Caption .........................................1    4

 6    Appearances......................................2    4

 7    Proceedings......................................4    4

 8    End of Proceedings..............................43    4

 9    Reporter's Certificate .........................44    4

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1              **P R O C E E D I N G S**

2           (Monday, August 1, 2022, 11:59 a.m.)

3              **THE COURT:**  We'll go on the record.  This

4    is Cause No. 471-02423-2021.

5              Who do we have for the plaintiff?

6              **MR. FLOYD:**  Douglas Floyd for the

7    plaintiff, Philip Floyd.

8              **MR. NORCROSS:**  And Chad Norcross,

9    co-counsel.

10             **THE COURT:**  And for the defendant?

11             **MR. HACKNEY:**  This is Ryan Hackney for the

12   defendants, Eli Dragon, MMWKM, and Series ERD1.  They

13   are also the claimants in the underlying arbitration.

14   I'll probably refer to them as the claimants and to

15   Mr. Floyd as the respondent.  I think it's more in

16   keeping with the stature of where the parties are right

17   now.

18             **THE COURT:**  All right.  Thank you.

19             And if y'all would just remain seated and

20   use the microphone.  It helps out tremendously.

21             **MR. HACKNEY:**  Thank you, Your Honor.

22             **THE COURT:**  The motion for continuance, is

23   that contained within the second objection to the

24   confirmation of the award?

25             **MR. FLOYD:**  Judge, I filed so many motions

1    for a continuance to be on the safe side because of the
2    way this thing has been spread out, but it's contained
3    in the last one that I filed on July the 11th.
4                    THE COURT:  July 11th.  I just wanted to
5    make sure I was looking at the right request.
6                    Go ahead and let's proceed on the
7    continuance request first.
8                    MR. FLOYD:  Well, I didn't -- I'm not sure
9    how prepared I am to do that because that is, really, a
10   secondary issue.
11                   THE COURT:  If you would -- it's almost
12   impossible for the microphone to pick you up when you
13   are standing.
14                   MR. FLOYD:  The way this was filed, the
15   way this process worked, it's not -- it does not follow
16   the standard rules of procedure.  As the law says,
17   the Texas Arbitration Act says -- and that is contained
18   in my plaintiff's objection to the hearing that was
19   filed on July the 11th -- is that when an application to
20   confirm is filed, it's docketed as a civil case, a civil
21   action, and it's supposed to proceed as a civil action.
22                   The claimants in this particular case,
23   they filed their application and only in the title of
24   the application used the word "motion," and then they,
25   in my opinion, gamed the system by then getting it set,

1   getting their application set as a judgment on the
2   pleadings, so to speak.
3           So when you do something like that, you
4   are supposed to -- one, it's improper, but there is some
5   argument that you should file a motion for continuance
6   for that hearing.  So I filed a motion for continuance
7   and -- well, unfortunately, the first motion, the
8   affidavit was left off.  So I filed a second motion for
9   continuance.  You automatically get your first motion
10  for continuance granted, if it was proper in the first
11  place.
12          But there is no real motion here by
13  claimants to confirm the award.  There is not a proper
14  motion.  That is a dispositive motion, and it should
15  never have been docketed as whatever kind of motion this
16  is.  A dispositive motion has to be filed.  And Texas
17  does not recognize judgments on the pleadings.  And the
18  rules under the Arbitration Act says that when you file
19  an arbitration application to confirm an award, it can
20  be confirmed unless there is some grounds offered.  We
21  offered grounds immediately.  We listed the grounds, and
22  then we subsequently filed a motion to vacate.
23          So we're here arguing something that is so
24  far out of the rules of procedure that it doesn't make a
25  lot of sense that we are talking about a continuance on

```
 1    something that should have never been set in the first
 2    place.
 3              THE COURT:  I apologize for interrupting.
 4    Did you say that a first continuance is always
 5    automatically granted?
 6              MR. FLOYD:  Pretty much if it's -- well,
 7    if there is a standard setting, a hearing set, you file
 8    an affidavit saying that -- pretty much, a hearing -- a
 9    continuance is generally granted on your first motion,
10    although you don't have to put down a lot of facts.  But
11    then I did a second motion where I put down more facts,
12    and then I'm here today addressing the issue.
13              It is highly inappropriate to ever set a
14    motion, in the first place, when the rules say it should
15    be docketed as a civil case and put on the court's
16    docket as a civil case.  It was not done.  None of that
17    was done.
18              THE COURT:  Okay.  What do you mean by
19    "docketed as a civil case."  What do you think the
20    case -- what is your perception of how the case is
21    proceeding?
22              MR. FLOYD:  Well, you -- like in any
23    petition that is filed, it's docketed as a civil case,
24    and you go and you file a motion for -- or application
25    for a docketing schedule, which we did.  We have got a
```

1    hearing date on the motion to vacate.  It's set for

2    January the 11th, 2023.

3              Claimants want to come in and,

4    essentially, do a judgment on the pleadings based on

5    because they got -- they were able to get the court

6    coordinator to set a hearing on a motion that really

7    isn't a motion, in the first place.  It's a

8    dispositive -- it would amount to a dispositive motion

9    after it's already been stated that the grounds were

10   offered.

11             THE COURT:  Are you telling me -- do you

12   dispute that there has been an arbitration award?

13             MR. FLOYD:  There was an award issued by

14   an arbitrator.

15             THE COURT:  So there is agreement that

16   there has been an award issued by an arbitrator?

17             MR. FLOYD:  Correct.

18             THE COURT:  So what would be procedurally

19   inappropriate about the party asking the Court to

20   confirm the arbitration award rendered by the

21   arbitrator?

22             MR. FLOYD:  Because Section 171.087 says:

23   Confirmation of the Award.  Unless grounds are offered

24   for vacating and modifying or correcting, then you can

25   enter the award.  But grounds have been offered.  It's

1    like in any civil case.  You file a petition.  You file

2    an answer.  The answer has been filed, denying that the

3    arbitration award should be granted because of the

4    grounds listed in the Federal Arbitration Act.  And we

5    listed all those.  They were listed in the answer,

6    response to their application.  And then, subsequently,

7    we have filed a motion to vacate, where we have gone

8    into even more detail.

9              So if we grant -- if the arbitration award

10   is approved, all of this goes out the window.  The law

11   means what it says.  The only reason for Section 10 of

12   the Federal Arbitration Act is that a party can

13   challenge the award.  Essentially, we're not being

14   allowed to challenge the award because it was never

15   docketed as a civil case.

16             **THE COURT:**  I am having trouble following

17   that argument.  It is pending in this court as a civil

18   case.  So I am not sure what it is you are saying isn't

19   happening that is supposed to be happening.  The case

20   was filed in 2021.  It was referred to arbitration.

21   There has been an arbitration award.  Now there is a

22   party moving to confirm the award.  That's what I

23   thought we were going to be hearing today, was should

24   the Court confirm or not confirm the arbitration award.

25   I am trying to understand why the Court can't make that

1  determination.

2          MR. FLOYD:  Because we have not gone

3  through the process of Rule 190 of the Rules of Civil

4  Procedure.

5          THE COURT:  You need discovery on --

6          MR. FLOYD:  The discovery on the issues

7  that were raised to challenge the award.

8          THE COURT:  Okay.  So the basis for not --

9  the basis for continuing the hearing on the motion to

10  confirm the arbitration award is that the nonmovant is

11  asking for discovery on the objections to the

12  confirmation of the award; is that correct?

13          MR. FLOYD:  Well, the nonmovant has filed

14  a motion to vacate under --

15          THE COURT:  I am aware of that.  I am just

16  asking about the motion that you are objecting to the

17  Court having.  You are saying we can't have the hearing

18  on the motion to confirm the arbitration award because

19  you need discovery on your arguments against confirming

20  the arbitration award.

21          MR. FLOYD:  We need -- because it's

22  docketed as a civil case.

23          THE COURT:  Okay.  It's a "yes" or "no"

24  question.  Is it correct -- am I understanding correctly

25  that you want the Court to continue the hearing on the

```
 1    motion to confirm the arbitration award so that you can
 2    conduct discovery on your arguments against confirming
 3    the arbitration award?
 4              MR. FLOYD:  That's exactly what I am
 5    asking for.
 6              THE COURT:  Okay.  All right.
 7              Mr. Hackney, your response.
 8              MR. HACKNEY:  Thank you, Your Honor.
 9              I believe I can add some clarity to the
10    many filings that have been issued in this case.  Just
11    to give some very brief background, my clients filed an
12    arbitration demand against Mr. Floyd in April of 2021.
13    Mr. Floyd then filed a declaratory judgment action in
14    this case, seeking that it makes rulings in the case.
15    The Court, at that time, ruled that the parties needed
16    to go to arbitration and ruled that the respondent had
17    waived his right to a jury trial.  That is important
18    because of what he is actually arguing in this case in
19    his pleadings.
20              There is now a final arbitration award
21    that came out in May.  We filed a motion to confirm that
22    arbitration award.  That has been pending for close to
23    three months now.  There was a hearing on that motion to
24    confirm the arbitration award on June 27th.
25    Judge Wheless, at that time, declined to rule on the
```

```
 1    motion to confirm because Mr. Floyd had not set his
 2    motion to vacate for that time.  It had already been
 3    filed.  His motion to vacate was filed in June, prior to
 4    that hearing.
 5                    Judge Wheless, at that time, said, "I will
 6    now -- "I will continue this hearing because you haven't
 7    had the chance to set your motion to vacate."  That was
 8    five weeks ago.  He's had the chance to set his motion
 9    to vacate since that time.  He's chosen not to do so.
10                    His theory, the reason he has given for
11    why he needs a continuance, which was presented in the
12    pleading that is actually in front of the Court right
13    now, is that he believes he is entitled to a jury trial
14    on a motion to confirm or vacate an arbitration award.
15    That is the reason he states in his pleading, and that's
16    what he has stated to Judge Wheless the last time we
17    were here on June 27th.  That is simply wrong.
18                    The Texas General Arbitration Act, as
19    stated in the Civil Practice & Remedies Code, says that
20    with regard to the applications to confirm or vacate an
21    arbitration award, the Court shall hear each initial and
22    subsequent application in the manner and with the notice
23    required by law or court rule for making and hearing a
24    motion filed in a pending civil action in a district
25    court.  That is the Civil Practice & Remedies Code
```

1   171.093.  That is dispositive on the reason he has

2   actually stated in his motion for continuance, that he

3   is entitled to a jury trial on this.

4            The law in Texas is extremely clear that

5   motions to confirm an arbitration award or motions to

6   vacate an arbitration award are decided by courts as a

7   matter of law.  I have never heard of any court in this

8   state conducting a jury trial on a motion to confirm or

9   vacate an arbitration award.  Mr. Floyd has not cited

10  any precedent saying he is entitled to and has not cited

11  any statute that says he is entitled to, and, in fact,

12  the statute says just the opposite.  Multiple parties

13  have attempted to make the same argument that he made,

14  that he is entitled to a jury trial on these claims,

15  that the Court can't decide it, that a jury has to

16  decide whether an arbitration award is decided.

17           I would say, first of all, the Court has

18  already decided he waived his right to jury trial on

19  this.  But every single case I've looked at in which

20  courts have examined this question, the same argument

21  Mr. Floyd is making, the parties in his position lost.

22  No court has ever said you are entitled to a jury trial

23  on a motion to confirm or vacate an arbitration award.

24           So I would say the reason he has actually

25  stated for why he is entitled to a continuance is simply

 1   wrong under the law, and there are no ifs, ands or buts

 2   about it.  His motion does not actually address

 3   discovery, but I would be happy to address the issue of

 4   discovery right now.

 5                   I would say, also, he has had, at this

 6   point, close to three months, since the arbitration

 7   award was issued, to present any evidence whatsoever

 8   that would meet the standard of law for vacating an

 9   arbitration award, and he has failed to do so.

10                   I would like to talk about what the

11   standard is because the standard -- this is -- you know,

12   this is what the question is here, and because the

13   standard is so in favor of the confirmation of

14   arbitration awards, nothing that Mr. Floyd has argued or

15   put in front of this Court, in ten separate pleadings,

16   could possibly meet the standard to vacate an

17   arbitration award, which requires the ruling here to

18   confirm that arbitration award today.

19                   The Texas Arbitration Act is very clear,

20   that unless the party can prove the very limited grounds

21   for vacating an arbitration award, the Court must

22   confirm the arbitration award.  That is mandatory

23   language.

24                   The Texas Supreme Court has stated that

25   all reasonable presumptions are indulged in favor of the

1    award and none against it.  And that is important, Your

2    Honor, because that is the lens through which this Court

3    must view the motion, and respondent has not pled

4    anything in his motion to vacate that could possibly get

5    that standard -- get past that standard that all

6    presumptions must be exercised in favor of confirming

7    the arbitration award.

8              The Supreme Court has also said that

9    because Texas law favors arbitration, judicial review of

10   an arbitration award is extraordinarily narrow.  The

11   bottom line here is that unless the respondent can prove

12   fraud or corruption by Judge Ashby, the arbitrator who

13   heard this case, confirmation of the award is required,

14   as a summary matter.

15             And, you know, in the response to that,

16   the respondent has taken the one path that is available

17   to him, and he has made allegations of fraud and

18   corruption against Judge Ashby who -- Judge Anne Ashby

19   was a respected jurist in Dallas County for 20 years,

20   who has served her community for many years and has been

21   in the legal community in the DFW area for decades.  And

22   Mr. Floyd has made multiple allegations of fraud,

23   corruption, dishonest conduct against her but has not

24   actually alleged any actions that, if true, would

25   require vacating the award under the legal standard in

```
 1   Texas.
 2                  If you look, Your Honor, at the motion to
 3   vacate that he has -- and his motion to vacate is not
 4   set today.  He has refused to set it.  He claims it
 5   can't be heard until January, because, to be honest, all
 6   of this is just an attempt to delay this as long as
 7   possible because there are no grounds that could support
 8   vacating the award.  Mr. Floyd's strategy, instead, is
 9   to say, "Well, I need a jury trial so it has to be
10   pushed off six months into the future.  I need 180 days.
11   I need discovery."
12                  But none of this, Your Honor, would get to
13   the standard.  In his pleadings, he says he disagrees
14   with four of Judge Ashby's rulings at the hearing.
15   That's it.  His claims are:  "It was unfair to me.  The
16   judge was corrupt because she ruled against me on these
17   particular issues."  And that is all.  If you read
18   through his motion to vacate, that's all it ever adds up
19   to.  There is nothing beyond that.  And the discovery
20   he's served on this makes that point crystal clear, Your
21   Honor.
22                  And may I approach?
23                  THE COURT:  What is it that you have?
24                  MR. HACKNEY:  This is the discovery he
25   served in this case.  He has already laid his hand out.
```

1    He has been clear about what he would get discovery on.

2                   THE COURT:  Is this in the record

3    anywhere?

4                   MR. HACKNEY:  It is.  It's an exhibit to

5    our response to his motion for continuance, Your Honor.

6                   THE COURT:  Okay.  Give me just a moment

7    to pull it up.

8                   MR. HACKNEY:  Because the standard, Your

9    Honor --

10                   THE COURT:  Hold on just a moment, please.

11                   MR. HACKNEY:  Yes.

12                   THE COURT:  This discovery, you said, is

13   attached to the claimants' response to the motion for --

14   wait.  I'm sorry.

15                   MR. HACKNEY:  We filed a response on

16   Friday, Your Honor, and it was attached -- claimants'

17   response to Mr. Floyd's motion for continuance.

18                   THE COURT:  Your Exhibit 2?

19                   MR. HACKNEY:  That's correct, Your Honor.

20                   THE COURT:  All right.  Now you can

21   proceed.

22                   MR. HACKNEY:  And the point I would make

23   about this, Your Honor, is that there are eight requests

24   for production on Page 3.  Each one of them goes to the

25   question of the sufficiency of evidence of damages

```
 1    presented at the arbitration hearing.  All eight of them
 2    go to that one question.  It says, "Produce a copy of
 3    all financial records in support of every actual
 4    revenues received from a covered client in calendar
 5    quarter immediately preceding February 5, 2021, that was
 6    produced in the arbitration hearing."  And that's Number
 7    1.
 8                    "Number 4.  Produce a copy of all
 9    documents in support of the definition of any
10    substantial benefits if you are claiming such
11    substantial benefits are proprietary to claimants and
12    form an element of your claim for damages that was
13    produced in the arbitration hearing."
14                    Every one of these deals with elements
15    relating to damages that were produced in the
16    arbitration hearing.
17                    The first thing I would say, Your Honor,
18    is that he is seeking documents he already has.
19    Documents produced in the arbitration hearing are
20    exhibits that he had as a result of being at the
21    arbitration hearing in January.
22                    **THE COURT:**  Okay.  I am going to pause you
23    there.
24                    Mr. Floyd, counsel has referred me to this
25    first request for production of documents to
```

1   defendants/claimants that seeks Production Items 1

2   through 8.  Is that the discovery that you contend that

3   you need in order to prepare for the motion to confirm

4   the arbitration award?

5               MR. FLOYD:  That's part of the discovery.

6   I just got that started after we had a setting --

7   counsel implied -- I believe he implied -- that the

8   motion to vacate has not been filed.  There is a motion

9   to vacate on file.

10              THE COURT:  Yes.  I have seen that.

11              MR. FLOYD:  And that points out,

12  specifically, the categories that the Federal

13  Arbitration Act grants for vacating an award.  And in

14  the motion, we point out that if an award is procured by

15  corruption, fraud, or undue means -- those are the

16  grounds.  In order to show, at a hearing, the grounds,

17  the evidence of the grounds, you have to do discovery.

18  The initial discovery --

19              THE COURT:  Okay.  I need to get -- we

20  need to get right to the nuts and bolts because we're

21  going to run real short on time.  I need to know what

22  discovery you would send if you were going to do

23  discovery on the motion to confirm the arbitration award

24  or your motion not to confirm it, to have it vacated.

25  Who would you ask and what would you ask in order to

1  prepare for that kind of hearing, which is set for
2  today?
3          MR. FLOYD:  As to the claimants, the other
4  party, this request for production is what I need from
5  them.  What we need also is, there is some 17,000
6  documents with the AAA.  I don't need all of those, but
7  I need to be able to -- I have to go through them, and
8  at a great expense, that I have not -- chosen not to
9  incur until we have this hearing.  I have to go through
10 those documents and get those documents from the AAA.
11         THE COURT:  And what documents and what do
12 you contend that they would show?
13         MR. FLOYD:  Well, the first document that
14 we got that we have to get authenticated is the billing
15 records of the arbitrator.  Those billing records show
16 that, according to the Supreme Court of United States,
17 she did not do her job.  If she had done her job, she
18 would have seen immediately that the contract in
19 question violated Texas law and was unenforceable in a
20 court of law.
21         THE COURT:  So your argument is the
22 arbitrator did not do her job because she did not agree
23 with your assessment of the contract?
24         MR. FLOYD:  She did not do her job because
25 she disregarded the existing law that was provided to

```
 1    her that the contract was unenforceable.  That was the
 2    initial declaratory judgment that was filed in this case
 3    to show that the contract was unenforceable under Texas
 4    law.
 5              Now, once it was ordered to arbitration
 6    without a ruling on that, the arbitrator then, under the
 7    Supreme Court rulings, is to supposed to make that same
 8    determination.  The arbitrator refused to do so.  We did
 9    not know why.  There had to be a motive as to why the
10    arbitrator refused to follow the law.  The motive was
11    determined, was shown when we got the arbitrator's
12    billing records.
13              The arbitrator, up front, wanted $52,000
14    to hear the case.  If she had read the case, which she
15    did not do, and read it under the existing law that was
16    available at the time, she would not have spent $52,000
17    going through the case.
18              That's the first one.  The arbitrator
19    award should be vacated because it was procured by
20    fraud, corruption, or undue means.  And in the motion to
21    vacate, we cited that and cited cases as to that.  Those
22    are questions of fact, not questions of law.  It's was
23    the arbitrator's conduct corruption, fraud, or undue
24    means?  Then that's the first one and without going
25    through each one and every one.
```

```
 1              The arbitrator derives their power from
 2   the arbitration clause in the contract.  They don't make
 3   up the power.  The arbitration clause in the contract --
 4   and that's cited in the motion to vacate -- specifically
 5   says both parties -- or each party will pay their own
 6   attorney's fees.  It says it.  In arbitration, each
 7   party will pay their own attorney's fees.  She totally
 8   disregarded that.  She has no power to go outside of the
 9   agreement of the parties and that -- and we cited some
10   law in the motion to vacate, and I have got more law
11   that would be filed later on.
12              THE COURT:  Okay.  Just to short-circuit
13   this aspect, on the motion for continuance, I do not
14   find that there are grounds to continue the hearing to
15   confirm the arbitration award.  If you would like to
16   proceed on the motion to vacate and the motion to
17   confirm at the same time, we can take those up at 1:15
18   this afternoon.  I am afraid that I do have to pause
19   now.  I can't complete the hearing because I do have a
20   meeting that I can't miss.  But it will be short.
21              So I expect that I will be able to come
22   back and resume this hearing at 1:15 this afternoon.  It
23   will be on the motion to confirm the arbitration award.
24   If you would like to argue the motion to vacate the
25   award at the same time, I'm happy to hear both motions
```

 1  and adjudicate both of those motions.  Otherwise, we'll

 2  just proceed on the motion to confirm the arbitration

 3  award and go from there.

 4          So we will pick up where we are leaving

 5  off at 1:15.  If y'all will be back in the courtroom at

 6  that time, and then we're going to stand in recess until

 7  then.

 8          (Recess taken from 12:25 p.m. through 1:22 p.m.)

 9          **THE COURT:**  We're going back on the record

10  in Cause No. 471-02423-2021 to finish up our hearing

11  from this morning.

12          I have already denied the request for

13  continuance.  So we are going to proceed on the motion

14  to confirm the arbitration award.

15          Mr. Floyd, did you want to proceed on the

16  motion to vacate as well?

17          **MR. FLOYD:**  Judge, I am objecting to

18  having to proceed, but I will proceed, but I would like

19  a ruling on my objection.

20          **THE COURT:**  The objection is overruled.

21  Subject to that, would you like to proceed on your

22  motion to vacate as well?

23          **MR. FLOYD:**  I will proceed.

24          **THE COURT:**  Okay.  Given that there is a

25  motion to vacate, which is, essentially, an objection to

1  confirming the award, Mr. Hackney, do you have any

2  problem with Mr. Floyd starting us off slightly out of

3  order here?

4            MR. HACKNEY:  I'd prefer to go first, but

5  if you'd prefer to hear from Mr. Floyd first, I'm fine

6  with that as well, Your Honor.

7            THE COURT:  I think it would make sense in

8  this context to go ahead and hear the objection first,

9  and then I will give you the opportunity to respond, and

10  if there is anything you need to add in support of the

11  motion, you can do it at that time.

12            Mr. Floyd.

13            MR. FLOYD:  I misunderstood what you said.

14  You said something about "object," and I wasn't quite

15  sure -- I already made my objection.  You overruled the

16  objection.

17            THE COURT:  I apologize for speaking in

18  general terms.  I am speaking of your objection to the

19  award, which is your motion to vacate.

20            MR. FLOYD:  Yes, I am objecting to the

21  award, Your Honor.

22            THE COURT:  Okay.  And I do plan to --

23  since we're on tight time this afternoon, I am going to

24  run the clock, just to make sure everyone gets equal

25  time.  So we have about 15 minutes per side.

1          Mr. Floyd, you may proceed when you are

2   ready.

3          **MR. FLOYD:**  I am going to call Philip

4   Floyd.

5          **THE COURT:**  Okay.  Was this intended to be

6   an evidentiary hearing, because I did not block out time

7   for an evidentiary hearing?

8          **MR. HACKNEY:**  Your Honor, this was not set

9   as an evidentiary hearing.  Mr. Floyd did not set this

10  as a hearing at all.  I also would object to an

11  evidentiary hearing.  Courts only have evidentiary

12  hearings on motions to confirm where there have been

13  credible allegations of fraud or corruption, in the

14  first place.  I can cite you two cases on that point.

15  We cited that in our briefing.

16          I think it would be inappropriate, and I

17  think, given the limited amount of time, it would be

18  inappropriate to have a witness come up when there

19  isn't -- Mr. Floyd hasn't said what the allegations are

20  of fraud or corruption that would be at issue in the

21  first place.

22          On whether or not a party is entitled to

23  an evidentiary hearing, I would point the Court to *In Re*

24  *Campbell*, 2020, Westlaw 7251467 from the Court of

25  Appeals of Beaumont, in which the Court of Appeals

```
 1   directed the trial court to not hold an evidentiary
 2   hearing on a claim of -- or that there was no basis to
 3   have an evidentiary hearing on a motion to vacate an
 4   arbitration award where the allegations that the party
 5   had raised about a supposed connection between the
 6   arbitrator's son and a party's attorney were trivial and
 7   immaterial.  That was the term that they used.  They
 8   said that because the party had not raised a bona fide
 9   issue of corruption or fraud, there was no basis to have
10   an evidentiary ruling [sic].
11              THE COURT:  Let's start with the bases.
12              Mr. Floyd, what are the bases, the actual
13   theories of fraud or corruption?
14              MR. FLOYD:  The actual basis is that the
15   contract, the employment contract, violates state law.
16   The arbitrator knew that it violated state law, but
17   notwithstanding, the arbitrator issued the award based
18   on a contract that would not sustain itself in a court
19   of law, and that the disregard of the law creates the
20   question as to what would be the motive of a lawyer, a
21   retired district court judge, and an arbitrator with
22   experience in employment law, what would be the motive
23   to cause an arbitrator to disregard the law?  The motive
24   is that the arbitrator wanted to make -- demanded
25   $52,000 to hear the case.
```

1    And after the case was over, the
2  arbitrator confirmed an -- or issued an award.  But in
3  looking at the arbitrator's billing records, it was
4  clear that the arbitrator never reviewed the contract
5  for the purpose of determining whether the contract was
6  enforceable under Texas law.  The contract itself -- the
7  employment contract repeatedly says that Texas law would
8  apply to the arbitration.
9    And we contend that by the arbitrator's
10  billing records, it shows that if the arbitrator had
11  done the job properly, as the Supreme Court requires
12  them to do, as set forth in the motion to vacate, they
13  would sit down and make a determination:  Is the
14  contract enforceable under Texas law?  It was not.  But
15  notwithstanding, she refused to issue a dispositive
16  motion or even consider the enforceability of the
17  contract under Texas law.  And the reason for it, the
18  motive for it was that she would have never made -- she
19  would have only made 3- or $4,000 in reading the
20  contract and saying, "I can't enforce this."  Instead,
21  she fraudulently refused to do so, refused to make a
22  determination of Texas law, and continued to bill her
23  time to get as much money as she can.
24    **THE COURT:**  Is the contract in the record
25  somewhere?

1              MR. FLOYD:  Yes, the contract is in the
2    record.  It was originally filed in the original
3    pleading.  And it's pointed out in the motion to vacate,
4    the specific clause in the contract.  Those provisions,
5    the employment provisions, the noncompete provisions are
6    unenforceable under Texas law.  And a pre-hearing brief
7    was submitted, and it was 200 pages of documentation
8    directly on point that this contract is unenforceable.
9              Now, manifest disregard of the law is not
10   a ground for vacating an award.  So you have to look to
11   what would be the motivation.  The motivation is fraud
12   and corruption and undue means.  That is set forth in
13   the motion to vacate.  And those are questions of fact.
14   That's why we needed sufficient time to develop those
15   questions of fact.
16             But it's clear that the arbitrator, when
17   the brief was -- hearing brief was submitted, that she
18   had incurred less than $7,000 of the 52,000.  And at
19   that time she should have said this contract is
20   unenforceable, and she did not do so.  That was set
21   forth in the pre-hearing brief that will be provided to
22   you today.  It's clearly unenforceable under Texas law.
23             What was the motivation for her to
24   continue the arbitration proceeding?  It was to collect
25   the other $45,000.  It was not to do justice.  It was

 1    not to have a fair hearing.  In fact, we'll submit and
 2    we'll put on evidence that there was no evidence
 3    submitted in the hearing.  That's the reason the
 4    claimants are opposing the request for production.  They
 5    know they cannot produce any documentation to support
 6    the award, zero, nada.
 7                 And that's what we want to show, that
 8    there was no evidence to support the award.  It was all
 9    made up, fraudulently, on self-generating documentation.
10    That's why they refused to produce, under a request for
11    production, anything to show actual revenue received,
12    which is the clause, the operative clause that has to be
13    found in order to find an award in the first place.
14                 The second -- well, that's my answer to
15    the contract --
16                 THE COURT:  So your theory is that there
17    must have been fraud or corruption because the
18    arbitrator did not grant the -- did not grant
19    Mr. Floyd's motion for summary judgment, and that was in
20    error, and you believe that that error led to -- or was
21    motivated by a desire to earn more fees on the case?
22                 MR. FLOYD:  Well, my statement is that it
23    was corruption and fraud and undue means for the
24    arbitrator to not do the arbitrator's job and render a
25    fair and just hearing because she was motivated by her

1    own greed and avarice to make an award that benefited

2    her monetarily to the detriment of the parties.  And

3    that's -- in the motion to vacate, I have cited that,

4    and cited the cases on fraud, corruption, and undue

5    means.  Those are questions of fact.  And that's why I

6    asked for the continuance, so we could develop that.

7              More, I have here a copy of the entire

8    invoices of the arbitrator.  Unfortunately, I was not

9    prepared to make multiple copies because we have a trial

10   date in the motion to vacate of January the 11th.  And

11   so that's the first one.

12             I am going to skip to the major one.  The

13   major claim in the contract is -- and it's cited in the

14   motion to vacate -- that an arbitrator's authority is

15   determined by the arbitration clause.  And that clause

16   is in the contract.  It's cited specifically in the

17   motion to vacate.  The arbitration clause says, in

18   arbitration, each party will pay their own attorney's

19   fees, and they will split the arbitration fees equally.

20             The arbitrator totally disregarded her

21   source of authority in making an award of attorney's

22   fees against Philip Floyd.  And there is cases cited to

23   that, and I have got many, many more cases that I can

24   cite, both state cases and federal cases.  And so the

25   award for attorney's fees is totally incomplete -- or

1   improper.

2              The evidence to be elicited from

3   Mr. Floyd, Philip Floyd, is that there was no evidence

4   submitted in the hearing of actual revenue received.

5   And that's why -- I keep repeating myself.  That's why

6   the claimants are so adamant that they don't want to

7   have to produce documents that don't exist.

8              There is also -- Mr. Floyd will testify

9   that there were a number of clients that were included

10  in the award that were not -- never clients of

11  Mr. Floyd's.  They just threw them in at the end because

12  the arbitrator -- it was obvious that she was not

13  following the law.  She would do anything to get her

14  $52,000.  And it's amazing that she started out six

15  months, eight months earlier, saying, "I think this will

16  take $52,000," and at the end, that's exactly what she

17  billed, was $52,000.  And the contract itself says,

18  specifically, each party will pay their own fees, and

19  she ordered the claimants to pay all of the expenses.

20             Now, you may wonder, why would the

21  respondent even address that issue, but that's just an

22  example of where the arbitrator failed to follow the

23  contract, failed to follow her authority in the

24  contract.  She failed to follow Texas law throughout the

25  arbitration, all for her own personal avarice, greed,

```
 1   and undue means.

 2                That's why we really think we need more

 3   time to develop those issues.  And it's no -- there

 4   should be no reason why the claimants should have any

 5   problem in a hearing on these matters because it has

 6   nothing to do -- we are not arguing the contract, the

 7   arbitration.  We are arguing fraud, corruption, and

 8   greed.  That's different than arguing a contract or

 9   just -- I mean arbitration, not making a mistake or

10   something.  This was not a mistake.  This was not error.

11   This was avarice, greed, and undue means.

12                And the Supreme Court, as set forth in the

13   motion to vacate, has never said -- has said that -- in

14   the Hoskins case -- that manifest disregard of the law

15   can be an element in the motions to vacate.  It makes no

16   sense, from a procedural standpoint, that there are

17   grounds to vacate and you don't have an evidentiary

18   hearing on those grounds.  So what -- it defies the

19   procedural logic that the law would say you have -- if

20   you produce this evidence, the award can be vacated, yet

21   you're not going to be able to -- you're not going to

22   have time or be allowed to have an evidentiary hearing.

23   And for that reason, I reurge my motion for a

24   continuance.

25                THE COURT:  The response.
```

1        **MR. HACKNEY:**  Thank you, Your Honor.

2        I would like to start off with the legal

3    standard here because I think that is controlling and

4    only leads to one answer.

5        The Texas Arbitration Act says that unless

6    the respondent can prove one of the very limited grounds

7    that are listed in the Federal Arbitration Act and the

8    Texas Arbitration Act, the Court must confirm the

9    arbitration award.  What that has meant in courts across

10   this state and across the country, you need to have some

11   kind of credible allegation with evidence of fraud or

12   corruption.  The sort of things -- the sort of

13   allegations that have allowed awards to be vacated are

14   things like bribery, undisclosed conflict, or improper

15   contact.

16       There is nothing like that in this case.

17   There's no allegations whatsoever.  The series of

18   allegations that the Court should have ruled differently

19   or that -- I'm sorry -- the arbitrator, Judge Ashby,

20   should have ruled differently on issues or she should

21   have billed some different amount, put some different

22   amount on her bills than she did, that simply does not

23   rise to the standard that the Texas Supreme Court has

24   laid out for a motion to vacate an arbitration award.

25       The Supreme Court has said that all

1   reasonable presumptions are indulged in favor of the
2   award and not against it.  The Supreme Court has also
3   said that because Texas law favors arbitration, judicial
4   review of an arbitration award is extraordinarily
5   narrow.  The courts have been clear that because
6   manifest disregard of the law is not stated in the Texas
7   Arbitration Act, that it cannot be a basis for vacating
8   an arbitration award.
9             So the truth is -- and I believe the
10  arbitrator, more or less, got all the big issues right
11  in this case, but even if she didn't, it wouldn't
12  matter.  She could have been entirely wrong on the law,
13  and it simply doesn't matter.  That's not a basis to
14  overturn an arbitration award.
15            Now, Mr. Floyd has filed about ten filings
16  in this case.  He's thrown a lot of mud at Judge Ashby,
17  and I think he has slandered Judge Ashby in some ways
18  that I think is not appropriate.
19            Basically, his ten filings boil down to
20  two points.  One is that he wants to delay this as long
21  as possible and will do anything he can to delay the
22  confirmation of the award; and, two -- and he just said
23  it right now -- he disagrees with rulings that the judge
24  made in the case.  So let's go on to a handful of those.
25            Just to be really clear, nothing Mr. Floyd

1   said today and nothing in his briefing identifies the

2   actual issues that Texas courts have found to justify a

3   motion to vacate.  There has been no allegations of

4   bribery, no allegations of improper contact, no

5   allegations of undisclosed conflict.

6               Now, looking at what he's actually

7   claimed, he says that Judge Ashby was corrupt because

8   she did not find that the contract provisions are

9   unenforceable.  Well, there was a dispositive motion on

10  that.  There was a hearing on that.  The arbitrator

11  heard the parties.  She received the briefing of the

12  parties, and she ruled that the contracts are

13  enforceable in this instance.  And that is not an issue

14  that this Court can look at now.  The Court just doesn't

15  have jurisdiction to second-guess the arbitrator on a

16  legal ruling.

17              He argued in the arbitration that he could

18  not be liable for the claimants' attorney's fees.  The

19  arbitrator found that there was a substantive right to

20  attorney fees by the claimants under Section 13 of the

21  contract, which was specific to the particular contract

22  provisions that he breached.  And that was the Court's

23  ruling on that.  And all he's doing is saying, "I am

24  asking this Court to second-guess the legal rulings of

25  the arbitrator," which this Court cannot do.

1              In a bizarre issue, he has complained that

2    Judge Ashby ordered the parties -- or ordered the

3    claimants to pay all of the arbitrator fees.  That is

4    something that we objected to.  We said no; they should

5    be split.  We said Mr. Floyd should have to pay half.

6    She chose -- Judge Ashby chose to employ the

7    AAA Employment Rules, which are stated in the

8    arbitration clause, under which the claimant pays the

9    full amount of the arbitration fee.  She chose to do

10   that because that was -- the Employment Rules were

11   stated in the contract.

12              What Mr. Floyd is essentially asking you

13   to do is to second-guess Judge Ashby's decision to apply

14   the AAA Employment Rules, which are stated directly in

15   the contract.  And this Court doesn't have jurisdiction

16   to do that.

17              And, finally, he argues that there was

18   insufficient evidence presented of damages.  That is

19   everything that he says he needs in discovery, are more

20   evidence on damages.  A question on the sufficiency of

21   the evidence is not something that a district court can

22   look at in a motion to vacate an arbitration award.

23   That is to be determined by the arbitrator, and it is

24   simply not grounds for a motion to vacate.  Whether it's

25   right or wrong just isn't a question that this Court can

consider for purposes of this motion.

Now briefly addressing this question of the billing records, which he brought up multiple times. He asked the Court to conclude that Judge Ashby was corrupt because she billed too much or too little for X or Y.  He thinks she should have billed more time on her time records for his brief on something.

That -- first off, that doesn't show corruption.  That just shows Judge Ashby wrote down a particular amount of time for that particular task. There is no right answer, under the law, for the number of minutes Judge Ashby was supposed to write down for a particular task.  There just isn't any ascertainable standard this Court could apply for what's the right answer on that.  And that's the whole reason why the Supreme Court has said all presumptions are made in favor of the award.

The Court is required to presume that whatever Judge Ashby wrote down there was appropriate in her view.  That's it.  That's the end of the day.  The reason that presumption is there is so that district courts, six months later, a year later, are not second-guessing how many minutes should have been spent reading a particular brief on a particular topic.  So my point is, the issues on the billing records, they just

 1  don't add up to anything.

 2            And, furthermore, the point on motive,

 3  that Judge Ashby did these because she was motivated to

 4  get the $52,000, well, she was going to get paid the

 5  same either way.  One of the nice things for an

 6  arbitrator in an arbitration is they get paid up front,

 7  and you don't get that money back afterwards.  So she

 8  could have ruled for claimants.  She could have ruled

 9  against claimants.  Her pay is the same either way.  So

10  that motive doesn't add up to anything for the results

11  that she reached in the arbitration award.  The two just

12  don't add up.

13            MR. FLOYD:  Judge, can I interject?  I am

14  going to object to counsel testifying.  I have let it go

15  on, but he is testifying.  None of that is in the

16  record.  None of that is in the record here.

17            THE COURT:  Okay.  It will not be

18  construed as evidence, simply argument.

19            MR. HACKNEY:  It is only tendered as

20  argument.

21            My point is, under the legal standard, the

22  things he has alleged don't add up to corruption or

23  fraud or evident impartiality under the standards that

24  the Texas Supreme Court has said that district courts

25  must apply.  And, for that reason, there is only one

1    possible answer here.

2              I would ask that the Court confirm the

3    arbitration award today.  This dispute has been pending

4    for a year and a half.  Our motion to confirm has been

5    pending for more than three months.

6              Arbitration is supposed to be a summary --

7    it's supposed to be an expedited proceeding, and the

8    confirmation of an arbitration award is supposed to be a

9    summary proceeding.  All the courts have said that.  I

10   think three months is more than enough time to develop

11   any issues that are necessary to address this.

12             We also need confirmation of the award

13   because the respondent is continuing to breach the

14   contract, to this day, on the issues that are there.  It

15   is my hope that once we have the arbitration award

16   confirmed, that will stop.

17             **MR. FLOYD:**  Judge, that is inappropriate

18   argument.  That is outside of any record whatsoever,

19   what counsel is testifying to.  That's really what he is

20   testifying to, that he's alleging that the claimant

21   is -- or that Mr. Floyd is continuing to breach the

22   agreement.  That's not relevant to this hearing.  It's

23   not appropriate to bring it up.

24             **THE COURT:**  Okay.  So in terms of what is

25   relevant, on the motion to vacate and the motion to

 1   confirm the arbitration award, I have read what has been

 2   submitted to the Court and the arguments concerning how

 3   many minutes were spent on deliberating different issues

 4   and things like that.

 5              Mr. Floyd, did you have something to add?

 6              **MR. FLOYD:**  May I address that issue?  I

 7   don't mean to interrupt you, but counsel addressed it.

 8   I want to address the issue of the minutes of the

 9   arbitration, as to why we needed a full-blown

10   evidentiary hearing on that.

11              **THE COURT:**  Okay.  You can address it.

12              **MR. FLOYD:**  Okay.  As the Court knows, the

13   arbitrator is an attorney.  Attorneys, when they collect

14   a fee, must collect a just fee.  They cannot collect an

15   exorbitant fee.  She wanted $52,000, and she would bill

16   against that fee.  She was not entitled to keep the

17   entire fee if it took less than $52,000.  So I object to

18   counsel arguing that she can keep the whole amount, so

19   that's not relevant.  It's extremely relevant.

20              One of the issues that -- the reason we

21   needed a continuance for additional -- because there are

22   lawyers on the ethics committee that look at charging an

23   exorbitant fee.  A fee -- if the arbitrator had done her

24   job properly, her fee would have been less than $7,000.

25   So she generated another $45,000 unnecessarily just to

1   collect a fee.  And that case law and the experts that

2   dwell in that area need -- I needed time to hire

3   those -- one of those experts to talk about this very

4   issue.  That's the nature of an evidentiary hearing.

5   And it's clear -- and I think the Court now sees -- we

6   need an evidentiary hearing.

7              Counsel keeps saying that you are not

8   entitled to an evidentiary hearing; you must plead

9   everything in your motion to vacate.  There is no law,

10  ever, in Texas that your pleadings are the only thing

11  that a Court can consider.  The motion to vacate

12  contains far more detail than any necessary pleadings to

13  get this before an evidentiary hearing.  That's what we

14  are maintaining, that we are entitled to an evidentiary

15  hearing.  We are entitled to the processes under Level 2

16  of the Rules of Evidence.

17             **THE COURT:**  Okay.  So on the motion to

18  confirm the arbitration award, the request for the award

19  to be vacated asks this Court to decide that the

20  arbitrator was wrong in the decision-making and that

21  being wrong in the decision-making and not declaring the

22  contract unenforceable was motivated by an intent to

23  gather more fees.

24             I've looked at the discovery, Mr. Floyd,

25  that you have told me that you want and gave you the

1    opportunity earlier to articulate the other discovery
2    that you would want.  And it's very clear, looking at
3    this discovery and from your argument, that what you are
4    asking this Court to do is look at the record that the
5    arbitrator had and determine that the arbitrator must
6    have been operating in bad faith or operating under a
7    guise of fraud or corruption because of how wrong the
8    arbitrator was.  And I cannot make that leap.  None of
9    the discovery that you have requested would result in
10   any insight whatsoever into Judge Ashby's process of
11   decision or how she deliberated on the merits of the
12   questions that were presented to her as an arbitrator.
13   So even granting that discovery would not change the
14   fact that you're asking the Court to conclude that the
15   arbitrator had some ill motive in making the rulings and
16   decisions that the arbitrator made, and there is just
17   simply no record of that.
18               So I am denying the motion to vacate the
19   award, and I am granting the motion to confirm the
20   award.
21               And with respect to the reurging of the
22   continuance, I am again denying that because that
23   discovery simply would not go to any of the dispositive
24   elements that the Court would have to consider to
25   entertain that theory.

1          So I will look to see if I have proposed

2     orders.  If I do, I'll get them entered for you

3     promptly.  If I do not, if you haven't already submitted

4     orders, please send those via eFile.

5                **MR. HACKNEY:**  I have paper copies with me

6     right now, Your Honor.

7                **THE COURT:**  EFile would be preferred.

8                **MR. HACKNEY:**  We have e-filed it.  It

9     would have been e-filed at the time of filing, which

10    would have been, I believe, in mid-May.

11               **THE COURT:**  So I will look for those

12    orders and get those entered for the parties.  And we

13    will go off the record.  The hearing is concluded.

14          (The proceedings were concluded at 1:55 p.m.)

15

16

17

18

19

20

21

22

23

24

25

1    STATE OF TEXAS

2    COUNTY OF COLLIN

3        I, Denise Carrillo, Official Court Reporter in and

4    for the 471st District Court of Collin, State of Texas,

5    do hereby certify that the above and foregoing contains

6    a true and correct transcription of all portions of

7    evidence and other proceedings requested in writing by

8    counsel for the parties to be included in this volume of

9    the Reporter's Record in the above-styled and numbered

10   cause, all of which occurred in open court or in

11   chambers and was reported by me.

12       I further certify that this Reporter's Record of

13   the proceedings truly and correctly reflects the

14   exhibits, if any, offered by the respective parties.

15       WITNESS MY OFFICIAL HAND this the 23rd day of

16   December, 2022.

17                          /s/ Denise Carrillo
                            Denise Carrillo, CSR, RMR, CRR
18                          Texas CSR #9269
                            Official Court Reporter
19                          471st District Court
                            2100 Bloomdale Rd., Suite 30276
20                          McKinney, Texas 75071
                            Telephone:  972.547.1803
21                          dcarrillo@co.collin.tx.us
                            Expiration:  5/31/2024

22

23

24

25

Denise Carrillo, CSR, RMR, CRR
Official Court Reporter - 471st District Court

Filed: 12/9/2022 2:45 PM
Lynne Finley
District Clerk
Collin County, Texas
By Claudia Gomez Deputy
Envelope ID: 70868388

Cause No. 471-02423-2021

| | | |
|---|---|---|
| PHILIP FLOYD, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MMWKM ADVISORS, LLC, SERIES | § | |
| ERD I, and ELIAS DRAGON, | § | |
| | § | |
| Defendants. | § | 471st JUDICIAL DISTRICT |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court makes the following findings of fact and conclusions of law, and where any finding of fact may be construed as a conclusion of law, or any conclusion of law may be construed as a finding of fact, they are intended to be so construed:

1.     The underlying dispute between the parties was the subject of a binding and enforceable agreement to arbitrate.

2.     Pursuant to this court's order, the dispute was submitted to arbitration in AAA Case No. 01-21-0002-6330, and a Final Award was issued by arbitrator Anne Ashby on May 16, 2022.

3.     The Final Award was in favor of Defendants, and awarded damages of $939,370.20; pre-hearing interest of $24,808.04; and attorney's fees and costs of $436,161.84.

4.     Defendants moved to confirm the award in the above-captioned cause on May 17, 2022. Plaintiff filed an objection to the confirmation of the award on May 18, 2022, and thereafter filed numerous pleadings objecting to the confirmation of the

**4**

award, seeking a continuance of the confirmation hearing, and requesting time to conduct discovery.

5.      Plaintiff's ground for objecting to the Final Award was that the arbitrator's decisions against Plaintiff and in favor of Defendants must have been motivated by improper bias or money, *i.e.*, partiality and/or corruption.

6.      Plaintiff offered no evidence to support the theory that the arbitrator's decisions were the result of partiality or corruption.

7.      Plaintiff acknowledged that his argument was predicated solely on speculation, due to Plaintiff's disagreement with the arbitrator's decisions.

8.      Plaintiff did not provide any basis for believing that Defendants were in possession of facts, documents, or other information that, through discovery, would bear out proof of partiality or corruption by the arbitrator.

9.      Further, Texas law does not provide for a dissatisfied party to invade an arbitrator's decision-making process via discovery based on mere surmise or suspicion of improper motive. Disagreement with the arbitrator's decisions, the only alleged proof offered by Plaintiff, does not constitute evidence that the arbitrator was partial or corrupt.

10.     Permitting a fishing expedition by Plaintiff in this instance would have deprived Defendants of the benefits of arbitration.

11.     Because Plaintiff offered no evidence of bias or corruption on the part of the arbitrator and offered no basis for the court to conclude that discovery from another party or non-party would reveal such information, the court's denial of time

for Plaintiff to conduct discovery and denial of any further continuance of the hearing on Defendants' motion to confirm the award were proper and posed no prejudice to Plaintiff.

12.     Moreover, the absence of such evidence leaves no genuine fact issue for any trier of fact to consider with respect to Plaintiff's allegations. The only evidence in the record was evidence of an enforceable agreement to arbitrate and an enforceable arbitration award.

13.     For these reasons, the court's order confirming the Final Award was proper.

Signed on <u>December 9, 2022.</u>

*Andrea K. Bouressa*
PRESIDING JUDGE

Filed: 7/8/2022 9:13 AM
Lynne Finley
District Clerk
Collin County, Texas
By Amy Mathis Deputy
Envelope ID: 66130733

CAUSE NO. 471-02423-2021

| | | |
|---|---|---|
| PHILIP FLOYD, | § | IN THE 471st JUDICIAL |
| | § | |
| *Plaintiff – Arbitration Respondent,* | § | |
| | § | |
| v. | § | DISTRICT COURT |
| | § | |
| MMWKM ADVISORS, LLC, SERIES ERD I, | § | |
| and ELIAS DRAGON, | § | |
| | § | |
| *Defendants – Arbitration Claimants.* | § | COLLIN COUNTY, TEXAS |

## <u>ORDER CONFIRMING ARBITRATION AWARD<br>AND FINAL JUDGMENT</u>

On this day came on to be heard MMWKM Advisors, LLC, Series ERD I, and Elias Dragon's (collectively, "Claimants") Application to Confirm Arbitration Award and Motion for Final Judgment. Having reviewed Defendants' Application and Motion, the evidence presented, the Court's prior orders, and any arguments of counsel, the Court is of the opinion that the award was made in accordance with the agreement between Claimants and Philip Floyd to arbitrate disputes and, therefore, that Claimants' Application and Motion should be GRANTED.

ACCORDINGLY, it is ORDERED that:

1.     Claimants' Application is GRANTED in its entirety.

2.     Claimants' Motion is GRANTED in its entirety.

3.     The Arbitrator's Final Award in the matter of *MMWKM Advisors, LLC, Series ERD I, and Elias Dragon v. Philip Floyd*, Case No. 01-21-0002-6330, before the American Arbitration Association, is CONFIRMED by the Court and incorporated herein pursuant to Texas Civil Practice and Remedies Code Section 171.001 *et seq.* and 9 U.S.C. § 9. The Arbitrator's Final Award, dated May 16, 2022, is confirmed, adopted, and incorporated herein as Exhibit A to this Order and Final Judgment. The Arbitrator's Interim Award dated March 14, 2022, which is

confirmed, adopted, and incorporated into the Arbitrator's Final Award is therefore further incorporated herein as Exhibit B to this Order.

4.     Accordingly, Judgment is ENTERED in favor of MMWKM Advisors, LLC, Series ERD I, and Elias Dragon and against Philip Floyd in accordance with the Final Award as follows:

      a.   Damages in the amount of $939,370.20;

      b.   Pre-Hearing Interest in the amount of $24,808.04; and

      c.   Attorneys' Fees and Costs for the arbitration proceeding in the amount of $436,161.84.

Exhibit A, p. 1 (Final Arbitration Award).

5.     In accordance with the Final Award incorporated herein, the total amount awarded of $1,400,340.08 is to be paid to Claimants by Philip Floyd on or before June 15, 2022, which is 30 days from the date of the Final Award dated May 16, 2022. Exhibit A, p. 2.

6.     This is a final, appealable judgment, disposing of all claims and parties.

IT IS SO ORDERED:

Signed this 1st day of August , 2022.

_Andrea K. Bowesa_
Judge Presiding, 471st District Court