UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PHILIP FLOYD, | § | |
|     Plaintiff | § | |
| vs. | § | |
| | § | CIVIL ACTION NO. 4:24-CV-00681 |
| ANDREA K. BOURESSA, RYAN HACKNEY | § | |
| PATRICK YARBOROUGH, ELIAS DRAGON | § | |
| MMWKM ADVISORS, LLC, SETH | § | |
| KRETZER AND JIM SKINNER, Defendants. | § | |

**PLAINTIFF'S RESPONSE TO SETH KRETZER'S MOTION TO DISMISS
AND REQUEST FOR SANCTIONS AND ATTORNEY'S FEES**

TO THE HONORABLE AMOS L. MAZZANT, III:

COMES NOW, Philip Floyd and files this response to Seth Kretzer Motion to Dismiss

and shows this Court as follows:

As to Defendant's allegation that this Court lacks subject matter jurisdiction (F.R.C.P

Rule 12 (b)(1)) of a case alleging 14th Amendment to the U.S. Constitution violation of

Plaintiff's right to procedural due process and under 42 U.S.C. 1982, Defendant is simply

mistaken.

As to Defendant's allegation that this Court lacks subject matter jurisdiction (F.R.C.P

Rule 12 (b)(6)) of a case alleging 14th Amendment to the U.S. Constitution violation of

Plaintiff's right to procedural due process and under 42 U.S.C. 1982, Defendant is simply

mistaken.

Plaintiff's complaint against Defendant Kretzer is set forth in Count 2. Count 2 is a 14th

Amendment to the U.S. Constitution violation of Plaintiff's right to procedural due process under

42 U.S.C. 1985.

Count 2 is independent of Count 1 and arises out of the fabrication of evidence by

**PLAINTIFF'S RESPONSE TO KRETZER'S MOTION TO DISMISS
PAGE 1**

Defendant Bouressa in a conspiracy with the other named Defendants to cover up the Constitutional violation set forth in Count 1.

It is well established that the fabrication of evidence is a 42 U.S.C. 1983 violation.  See *Napue v. Illinois*, 360 U.S. 264 (1959).  Also, *Barnes v. City of New York*, 68 F. 4th 123 (2d Cir. 2023) makes it perfectly clear that 42 U.S.C. 1983 covers fabricated evidence claims.  See *United States v. Cabrera*, 22 Cr. 10 (NRB) (S.D.N.Y. Mar. 5, 2024); To the extent movants also cite these 42 U.S.C. § 1983 cases to show that the use of fabricated evidence violates a defendant's due process rights, the Court does not dispute that a prosecution based on fabricated evidence can violate due process. See *Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023) (citing *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021)).

That the "evidence" in the findings of fact submitted by Defendant Bouressa is fabricated, is born out by Count 1.  There was no evidence presented on August 1, 2022, therefore the findings of facts are fabricated.

Count 2 sets forth a rather detailed plan by Defendant Bouressa and Defendants Hackney and Yarborough to file falsified findings of fact and conclusions of law in the Appellate proceeding.  That the filing of falsified documents in a proceeding is also a crime under Texas Criminal law is a motivating factor for the conspiracy to coverup the fabricated evidence.  The Complaint in Count 2, shows Defendant Kretzer's involvement in the conspiracy that began when he became receiver.  Beginning on June 9, 2023, Defendant Kretzer became a wilful participant in the conspiracy to deprive Plaintiff of his procedural due process rights.

After Defendant Kretzer's alleged appointment as receiver, Defendant Kretzer, intentionally and knowingly chose to participate in the conspiracy as set forth in Count 2 of the Complaint.  Plaintiff uses the term "alleged appointment" because the Nunc Pro Tunc Order

Appointing Receiver Nunc Pro Tunc dated June 9, 2023 is an illegal order and amounts to a

fraud on the court by Defendant Kretzer and Defendant Yarborough.  There were two hearings

scheduled regarding the appointment of a receiver; the first was on February 21, 2023.

Defendant Bouressa conducted that hearing but no order resulted from that hearing.  One

hundred and eight days later, there was a "status" hearing on June 9, 2023.  Defendant Bouressa

was not present at that hearing.  Sitting in the 471st District Court, Judge Ray Wheless conducted

that hearing.  At the conclusion of the hearing and over the objections of Plaintiff, Judge Wheless

signed an Order Appointing Receiver designating Defendant Kretzer.  That order signed by

Judge Wheless was never entered into the Clerk's Record as a valid order of the court.  Without

the knowledge of Plaintiff, Defendant Yarborough and Defendant Kretzer somehow got the

District Clerk of Collin County to filed the Order Appointing Receiver Nunc Pro Tunc.

Ostensibly a District Court judge signed that order, but no record of who actually signed that

order?  Notwithstanding, the total absence of any evidence in either the February 21, 2023

hearing or the June 9, 2023 to support the appointment of a receiver was a violation of Plaintiff's

procedural due process rights and as such conveyed no lawful authority on Defendant Kretzer;

therefore, the order appointing Defendant Kretzer as a  receiver is an illegal order therefore void.

The June 9, 2023, Order Appointing Receiver Nunc Pro Tunc was not signed by Defendant

Bouressa or Judge Ray Wheless.  Whoever signed the Order Appointing Receiver Nunc Pro

Tunc on June 9, 2023, was acting ultra vires.  The order being void deprives Defendant Kretzer

of any immunity.  Attached hereto and made a part hereof as Exhibits 1 and 2 are the Reporter's

Record for February 21, 2023 and June 9, 2023.  The Reporter's Record clearly shows that no

evidence was offered by movants, Defendant Yarborough or Defendant Kretzer; therefore, the

June 9, 2023 Order Appointing Receiver Nunc Pro Tunc is void ab initio.  Attached hereto and

**PLAINTIFF'S RESPONSE TO KRETZER'S MOTION TO DISMISS**
**PAGE 3**

made a part hereof as Exhibit 3 is a copy of the June 9, 2023 Order Appointing Receive Nunc Pro Tunc.  Defendant Kretzer was present on June 9, 2023 and he knew that no evidence was admitted to support the Motion to Appoint a Receiver.  At that point Defendant Kretzer became a conspirator in the conspiracy.  In furtherance of the conspiracy, Defendant Kretzer and Defendant Yarborough scheduled an hearing for August 7, 2023 where they conspired with Defendant Bouressa to enter an Amended Order Appointing Receiver the purpose of which was to clean up the obvious defects in the June 9, 2023 Order Appointing Receiver Nunc Pro Tunc and use a new order to seize property belonging to Plaintiff by denying him his constitutionally protected due process rights to offer a defense against the actions of the conspirators.  Attached hereto and made a part hereof is the Reporter's Record for August 7, 2023.  Defendant Bouressa was the judge for the August 7, 2023 hearing.  Again, the Reporter's Record is totally devoid of any evidence being offered in the hearing.  As a result of the August 7, 2023 hearing, on August 12, 2023 Defendant Bouressa signed an Amended Order Appointing Receiver that deprived Plaintiff of his civil rights.  Attached hereto and made a part hereof as Exhibit 4 is a copy of the August 12, 2023 Amended Order Appointing Receiver.

On or about February 21, 2024, Defendant Kretzer and Defendant Yarborough conspired to have Defendant Bouressa order Plaintiff to turnover a $35,000 check to Defendant Kretzer in violation of Plaintiff's due process rights.  At the February 21, 2024 hearing, Defendant Bouressa refused to permit Plaintiff to offer any evidence that the $35,000 was earned income and was not subject to a turnover order without evidence that the money was exempt property Plaintiff under Texas law.  Defendant Bouressa subsequently signed a Order for Turnover of $35,000 Check From American General Life Insurance Company ("Turnover Order" directing Plaintiff to turnover to Defendant Kretzer a check for $35,000.  Attached hereto and made a part hereof as

Exhibit 5 is a copy of the Turnover Order.  Attached hereto and made a part hereof is the

Reporter's Record for February 21, 2024 as Exhibit 6.  The 14th Amendment to the U.S.

Constitution and Texas law requires an evidentiary hearing (due process) before Plaintiff's

property can be ordered to be turnover to anyone.

Civil conspiracy is a claim that can be asserted when multiple defendants combine to do

something unlawful to cause damages.   Civil conspiracy is not an independent tort, but rather, a

theory of vicarious liability which requires some underlying wrong.  In this case, the underlying

wrong was the crime of filing a falsified document in the underlying proceeding for the purpose

of misleading the Court of Appeals when there was no evidence in the Reporter's Record to

support the judgment.

Civil  conspiracy depends entirely on the injury caused by an underlying tort; the injury is

the damage from the underlying wrong, not the conspiracy itself.  *Agar Corporation, Inc. v.*

*Electro Circuits International*, LLC, 580 S.W.3d 136, 141-142 (Tex. 2019).

There are five elements required to prove civil conspiracy: 1) a combination of two or

more persons; 2) the persons seek to accomplish an object or course of action; 3) the persons

reach a meeting of the minds on the object or course of action; 4) one or more unlawful, overt

acts are taken in pursuance of the object or course of action; and 5) damages occur as a proximate

result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). The claim requires evidence of a specific

intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful

means. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex.

2017). This necessarily requires a meeting of the minds on the object or course of action. *Tri*, 162

S.W.3d at 556 (citing *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). The

conspiring parties must be aware of the intended harm or proposed wrongful conduct at the

outset of the combination or agreement. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996); see also, Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854, 857 (Tex. 1968).

Therefore, to prevail on a civil conspiracy claim, the plaintiff must show a  defendant was liable for some underlying tort. Id. (citing *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 635 (Tex. 1997)).  Proof of a civil conspiracy may be, and usually must be, made by circumstantial evidence, but vital facts may not be proved by unreasonable inferences from other facts and circumstances. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1969).

Count 2 sets forth the vital facts of Plaintiff's 42 U.S.C. 1983 complaint and  the conspiracy case with great specificity.  Once Defendant Kretzer files an answer in the case, he has every right to assert his claim of derived immunity for damages.  Plaintiff asserts that unlike a judge, a receiver's derived immunity is limited to those acts contained in a legal appointment. Since the appoint was illegal, the order appointing receiver cannot convey derived immunity and in any event, the acts of conspiring to deprive Plaintiff of his civil rights are outside the appointment and is not covered by any derived immunity.

Defendant Kretzer's claim of derived immunity does not entitled him to a dismissal.  It just means that he may have immunity against damages if the person his immunity derived from has immunity.  Since he apparently he is claiming immunity derived from a district court judge, state court judges are not immune from federal suits seeking equitable or declaratory relief

See *Crane v. Texas*, 759 F.2d 412 (5th Cir. 1985) holding;

The defendant judges of the Dallas County Criminal Courts joined with Dallas County in claiming entitlement to Eleventh Amendment immunity. Insofar as they sought to derive such immunity from the County, their claim must plainly fail with that of the County.

**PLAINTIFF'S RESPONSE TO KRETZER'S MOTION TO DISMISS**
**PAGE 6**

Monell, 436 U.S. at 690 n. 55, 98 S. Ct. at 2035 n. 55. The judges also contend that they are not "persons" under Sec. 1983. The Supreme Court's recent decision in Pulliam v. Allen, 466 U.S. 522, 104 S. Ct. 1970, 80 L. Ed. 2d 565 (1984), settles this question. In Pulliam, an action brought under Sec. 1983, the Court held that judicial immunity bars neither prospective injunctive relief nor the award of attorneys' fees under Sec. 1988. That state judges are "persons" for Sec. 1983 purposes is clearly implicit in this holding. **Further, our own cases establish that state court judges are not immune from federal suits seeking equitable or declaratory relief.** Ciudadanos Unidos de San Juan v. Hidalgo County Grand Jury Commissioners, 622 F.2d (emphasis added) 807, 813 n. 16 (5th Cir. 1980), cert. denied, 450 U.S. 964, 101 S. Ct. 1479, 67 L. Ed. 2d 613 (1981) (Sec. 1983 action against state judges); Sparks v. Duval County Ranch Co., Inc., 604 F.2d 976, 980-81 (5th Cir. 1979) (en banc), aff'd sub nom Dennis v. Sparks, 449 U.S. 24, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980)

Plaintiff's Count 2 also contains the elements of a violation of 42 U.S.C. 1985 (3), conspiracy to interfere with civil rights by depriving persons of rights or privileges which is a private cause of action for the conduct of some or all of the conspirators, including Defendant Kretzer.  42 U.S.C. 1985 (3), conspiracy to interfere with civil rights is a Federal cause of action not restricted by any State activity.  If the court permits, Plaintiff will amend the complaint to specifically include the defendants violations of 42 U.S.C. 1985 (3), conspiracy to interfere with civil rights.

Defendant Kretzer has the right to claim derived immunity against damages for participation in a conspiracy.  However, Plaintiff challenges Defendant Kretzer's claim of derived immunity on two points: First, the June 9, 2023 Order Appointing Receiver Nunc Pro Tunc is an unconstitutional order it violated Plaintiff's due process rights because there is no evidence in the record to support the unconstitutional actions of Defendant Bouressa.  Conspiring to deprive Plaintiff of his civil rights by Defendant Kretzer is not within the scope of the duties of a judge or a receiver and therefore, Defendant Kretzer is acting ultra vires when he acts beyond the scope of his statutory authority, or pursuant to authority deemed to be unconstitutional. Plaintiff contends that Defendant Kretzer was acting beyond the scope of any perceived statutory

authority, or pursuant to authority this Court is asked to deemed to be unconstitutional.  If the court determines the actions of Defendant Kretzer in furtherance of the conspiracy is not covered by derived immunity, Defendant Kretzer may be liable for damages.

Defendant Kretzer's reliance on *Davis v. Bayless, Bayless & Stokes*, 70 F.3d 367, 376 (5th Cir. 1995) is misplaced. The pleadings in this case establish that Defendant Kretzer was acting in a conspiracy with the Defendant Yarborough to burden and harass Plaintiff during the court proceedings, conduct that would not be included in the authority of a receiver even if he had derived immunity.  Defendant Kretzer's first duty is to the law and then the court.  He breached his duty to both.

### PLAINTIFF'S REQUEST FOR SANCTIONS AND ATTORNEY'S FEES AGAINST DEFENDANT KRETZER

Plaintiff would show that Defendant Kretzer uses his Motion to Dismiss is an unprofessional personal attack on Plaintiff and Plaintiff's attorney because he believes has immunity from any damages for his actions The unprofessional attacks are as follows:

Page 1:      In the opening paragraph A, Defendant Kretzer makes an ad hominem attack on Plaintiff by stating in bold letters; "Philip Floyd Is A Certified Financial Planner – And A Financial Deadbeat.  Such a statement in a pleading is uncalled for and unprofessional.

Page 2:      In the first full paragraph Defendant Kretzer in referring to Plaintiff states,  "What Mr. Floyd's clients and prospects may not know is that his personal financial strategy for "avoid[ing] significant losses" is to thumb his nose at his creditors and circumvent court orders designed to hold him accountable." This is an ad hominem attack on Plaintiff that has no place in a motion to dismiss.

Page 2:      Second  paragraph: "Though Mr. Floyd boast online… obligations are closer to home, in Texas courts." this is an unprofessional comment to denigrate Plaintiff and inappropriate in a motion to dismiss.

Page 3:      In the paragraph beginning with, "The judgment and turnover order were affirmed by the Dallas Court of Appeals in early 2024", Defendant Kretzer states, "Appellees produced evidence that Floyd owned non-exempt property and that Appellees had an unpaid final judgment against Floyd."  This is a completely false statement that Defendant Kretzer knows to be false as well as inappropriate in a motion to dismiss.

Page 4:      In the paragraph entitled; "**D. Judge Bouressa Recuses When She Referred Attorney Floyd To The State Bar**", Defendant Kretzer makes a maliciously  false statement with no other purpose than to denigrate Plaintiff's counsel.  Counsel for Plaintiff has not been referred to the State Bar by Judge Bouressa.

Page 4:      In the first sentence below the heading, Defendant Kretzer accuses Plaintiff of defrauding creditors.  Defraud is a malicious word meaning to illegally obtain money from someone by deception.  This ad hominem attack on Plaintiff has no place in a motion to dismiss.

Page 4:      In the last sentence, Defendant Kretzer continues with his personal attacks with the statement; "While it was not clear to the undersigned at the June 6 hearing if Attorney Floyd had conveyed an actual extortion threat- the Complaint filed in this Court leaves little doubt on that score."  Clearly, Defendant Kretzer is

accusing Plaintiff's attorney of "extortion threats."  What purpose other than to denigrate Plaintiff and his attorney could Defendant Kretzer have for using such a malicious word as "extortion?"  Such comments have no place in a motion to dismiss.

Page 5:          In the first full paragraph, Defendant Kretzer states;

> "The obvious implication is that the Floyds filed this 1983 lawsuit to front-run the pending State Bar investigation and (they hope) to keep the United States Attorney's Office in this District away from investigating them for their (wholly unsuccessful) attempts to influence a state judicial officer and the county sheriff. he uses "pending State Bar investigation" which implies he either knows about something and has been talking with Bouressa or is making this up."

Such statement has no place in his motion to dismiss other than to continue to denigrate Plaintiff and his attorney.  The statement is wholly false and malicious.

Page 8:          In the last sentence preceding the Conclusion heading, Defendant Kretzer again alludes to "... the Floyd apparently tried to influence two elected state officeholders." While that is a false statement, even if true, it has no place in a motion to dismiss other than to denigrate Plaintiff.

Defendant Kretzer uses his Motion to Dismiss as a forum to make personal and unprofessional attacks on Plaintiff and Plaintiff's attorney in the belief that he has immunity for such unprofessional conduct.

## **PRAYER**

Plaintiff prays that the Motion to Dismiss filed by Defendant Kretzer be denied and he be required to file an answer in this cause as Count 2 and that he be sanctioned for his unprofessional conduct in his Motion to Dismiss as well as ordered to pay Plaintiff for his attorneys fees in the amount of $1,200.00.

**PLAINTIFF'S RESPONSE TO KRETZER'S MOTION TO DISMISS**
**PAGE 10**

Respectfully submitted,

**/s/ *Douglas T. Floyd***
DOUGLAS T. FLOYD
Attorney for Plaintiff
6521 Preston Rd., Suite 100
Plano, Texas 75024
214-704-7081
877-846-3149 Fax
SBN: 07181700
Lawyerfloyd@aol.com

## CERTIFICATE OF SERVICE

I certify that a copy of the above Plaintiff's Response to Seth Kretzer's Motion to Dismiss was served on the **30th day of August, 2024**, upon all parties who have entered an appearance, using the CM/ECF system.

**/s/ *Douglas T. Floyd***
DOUGLAS T. FLOYD

## AFFIDAVIT AUTHENTICATION DOCUMENTS

STATE OF TEXAS          }

COUNTY OF COLLIN       }

My name is Douglas T Floyd I am qualified to make this affidavit. I was legal counsel in the trial court for Plaintiff and counsel in this Court.  Accordingly, I have personal knowledge of the documents filed in the trial court I have examined the original record filed in the trial court and the copies of each and every document in the Exhibits and the Reporter's Record and I swear under penalty of perjury that they are true and correct copies of the originals.

/s/ *Douglas T. Floyd*
DOUGLAS T. FLOYD

## EXHIBITS

1.    Reporter's Record for February 21, 2023
2.    Reporter's Record for June 9, 2023
3.    Order Appointing Receive Nunc Pro Tunc, dated June 9, 2023
4.    Amended Order Appointing Receiver, August 12, 2023
5.    Order for Turnover of $35,000 Check From American General Life Insurance Company, February 21, 2024
6.    Reporter's Record for February 21, 2024

**PLAINTIFF'S RESPONSE TO KRETZER'S MOTION TO DISMISS**
**PAGE 11**

```
 1                      REPORTER'S RECORD

 2                 CAUSE NO. 471-02423-2021

 3

 4  PHILIP FLOYD,              ) IN THE DISTRICT COURT
                               )
 5        Plaintiff,           )
                               )
 6  VS.                        ) 471ST JUDICIAL DISTRICT
                               )
 7  MMWKM ADVISORS, LLC, and   )
    ELIAS DRAGON,              )
 8                             )
          Defendants.          ) COLLIN COUNTY, TEXAS
 9

10

11  *******************************************************

12                         HEARING

13                    FEBRUARY 21, 2023

14  *******************************************************

15

16

17

18

19

20

21        On the 21st day of February, 2023, the following

22  proceedings came on to be held in the above-titled and

23  numbered cause before the Honorable Andrea Bouressa,

24  Presiding Judge, in McKinney, Collin County, Texas.

25  Proceedings reported by realtime machine shorthand.
```

Denise Carrillo, CSR, RMR, CRR
Official Court Reporter - 471st District Court

1                      **A P P E A R A N C E S**

2    FOR THE PLAINTIFF:

3         MR. DOUGLAS T. FLOYD
          SBOT NO. 07181700
4         6521 Preston Road, Suite 100
          Plano, Texas 75024
5         Phone:   (214)704-7081
          Email: Lawyerfloyd@aol.com
6

7

8    FOR THE DEFENDANTS:

9         MR. PATRICK YARBOROUGH
          SBOT NO. 24084129
10        Foster Yarborough PLLC
          917 Franklin Street, Suite 220
11        Houston, Texas 77002
          Phone:   (713)331-5254
12        Email:  patrick@fosteryarborough.com

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
1                              INDEX

2                             HEARING

3     February 21, 2023

4                                                    PAGE

5     Caption ...........................................1

6     Appearances.......................................2

7     Proceedings.......................................4

8     End of Proceedings...............................19

9     Reporter's Certificate ..........................20

10


11


12                            EXHIBITS

13    DEFENDANT
      NO.           DESCRIPTION        OFFERED ADMITTED
14
      1   Wells Fargo/Business Records
15        Declaration                     8

16


17


18


19


20


21


22


23


24


25
```

4

```
 1              P R O C E E D I N G S
 2        (Tuesday, February 21, 2023, 10:28 a.m.)
 3              THE COURT:  We'll go on the record in
 4   Cause Number 471-02423-2021.
 5              We have Mr. Floyd for the plaintiff and
 6   Mr. Yarborough for the defendant and judgment creditor,
 7   and this is a motion for a post-judgment receivership.
 8              And this case is currently on appeal; is
 9   that correct?
10              MR. FLOYD:  Yes.
11              MR. YARBOROUGH:  Yes, Your Honor.
12              THE COURT:  And has the judgment been
13   superseded?
14              MR. YARBOROUGH:  No, Your Honor.
15              THE COURT:  Okay.  Mr. Floyd, is there any
16   intention to supersede the judgment at this point?
17              MR. FLOYD:  I didn't hear what you said.
18              THE COURT:  Is there any intention on the
19   part of the plaintiff to supersede the judgment at this
20   point?
21              MR. FLOYD:  No, Your Honor.
22              THE COURT:  Mr. Yarborough, you may
23   proceed.
24              MR. YARBOROUGH:  Thank you, Your Honor.
25              May it please the Court.
```

1                On behalf of judgment creditors, I am here

2    today to request the appointment of a qualified

3    receiver.  There's a final arbitration award in the

4    underlying case here, which has since been confirmed and

5    reduced to final judgment by this Court.  And there was

6    a motion for new trial, which Your Honor denied in

7    November, 2022.

8                Furthermore, in this case, judgment

9    creditors have pursued every single judgment collection

10   tool available prior to seeking this receivership, but

11   to no avail.  To date, Mr. Floyd has not paid one dollar

12   of the final judgment entered by this Court, now, almost

13   six months ago.

14               So, Your Honor, there are three principal

15   reasons why judgment creditors urge the Court to appoint

16   a receiver here.  First and most importantly, Mr. Floyd

17   owes $1.4 million pursuant to a final judgment of this

18   Court, and he hasn't paid anything.  He hasn't offered

19   to pay anything.  And to make matters even worse,

20   Mr. Floyd has not complied with the order for turnover

21   relief entered by this Court.

22               He has not supplied any excuse for not

23   providing any sort of payment plan or any sort of offer

24   of payment.  And, instead, he has fought tooth and nail

25   not to comply with this Court's orders, including a writ

1    of execution, Your Honor, a turnover order, an abstract
2    of judgment, which, of course, you can't comply with,
3    but it's still further evidence of our efforts.  And we
4    also filed a garnishment case.
5                   And so, Your Honor, first and foremost,
6    the most important reason why a receivership is
7    warranted here is because we've tried everything else,
8    and so we don't think there is any other adequate
9    remedy, even though we don't have to prove that.  There
10   just isn't.  And, secondly, Your Honor, as Mr. Floyd
11   acknowledges in his response, for the evidence to be
12   sufficient to appoint a receiver, you need evidence of
13   non-exempt assets.
14                   Judgment creditors supplied the Court --
15   in exhibits that are authenticated by affidavit --
16   evidence of multiple bank accounts with positive
17   balances at Wells Fargo Bank that were produced in
18   post-judgment discovery as well as the garnishment case
19   that judgment creditors filed against Wells Fargo Bank
20   that fully complied.  Bank accounts with positive
21   balances are quintessential non-exempt assets.  So the
22   standard has been met.
23                   And we've also identified -- and I brought
24   evidence of this to this hearing, which I am happy to
25   provide to Mr. Floyd and to the Court, if I may

1    approach.

2                    THE COURT:  Sure.

3                    MR. YARBOROUGH:  Your Honor, what I have

4    here is a business records declaration supporting bank

5    records from Wells Fargo Bank, demonstrating that not

6    only does Mr. Floyd have non-exempt assets.  He has a

7    22,000-a-month revenue stream, which you can see on

8    Pages 4 and 6 of Exhibit 1.  You can see that

9    Mr. Floyd has --

10                    MR. FLOYD:  Your Honor, I have to object

11   here.  This is hearsay.  There's no business records

12   authentication of these documents.  They're totally

13   inadmissible and should not be considered at all by this

14   Court in this hearing.

15                    MR. YARBOROUGH:  Your Honor, may I

16   respond?

17                    THE COURT:  Please, Mr. Yarborough.

18                    MR. YARBOROUGH:  Okay.  To that objection,

19   we requested and received the business records

20   declaration to authenticate these bank records, which

21   have never been challenged.  These have been filed with

22   the Court already.  Mr. Floyd has responded multiple

23   times to this motion, never raising this evidentiary

24   objection.

25                    And this, Your Honor, is proof not only

1    that we have positive balances in these bank accounts,

2    which Mr. Floyd doesn't contest, but also that there is

3    monthly recurring revenue of approximately 21- to

4    $22,000 hitting Mr. Floyd's bank accounts every month.

5    No matter where they go, they're --

6              THE COURT:  Just circling back to just the

7    admissibility of the document, if you are offering it as

8    an exhibit, it does appear to be a valid business

9    records affidavit, which would make it an exception to

10   the hearsay rule.  So I will overrule the hearsay

11   objection and admit this exhibit.

12             If you would mark it, please.

13             MR. YARBOROUGH:  Yes, Your Honor.

14             Thank you.  I apologize for getting ahead

15   of myself there.

16             MR. FLOYD:  Judge, I would like to renew

17   my objection and state that this was just provided

18   today.  Business records affidavits need to be provided

19   well before the hearing.

20             THE COURT:  And your response to that

21   objection, Mr. Yarborough?

22             MR. YARBOROUGH:  Your Honor, these records

23   have been produced in this case and have been produced

24   to Mr. Floyd already, and this is further evidence of

25   monthly recurring revenue --

1    THE COURT:  Did you state whether it had
2  been filed?
3                MR. YARBOROUGH:  Excuse me.  Your Honor,
4  no, we did not file that.
5                THE COURT:  Okay.
6                Mr. Floyd, refresh my recollection as to
7  the rule, as to how far in advance a business record
8  affidavit has to be on file before it can be utilized in
9  court?
10                MR. FLOYD:  A reasonable time, but 15 days
11  is, I believe, what the statute says is the minimum
12  time.
13                THE COURT:  All right.  I will sustain
14  that objection.
15                Mr. Yarborough, anything further?
16                MR. YARBOROUGH:  Yes, Your Honor, just
17  briefly.
18                Judgment creditors do not rely on this
19  piece of evidence to meet their burden.  The burden is
20  easily met by uncontested evidence that is attached to
21  the motion.  The point here is, merely, that Mr. Floyd
22  has income, and that has been produced to Mr. Floyd, and
23  there is no argument here that he's paid any money to
24  satisfy this judgment, that he's superseded this
25  judgment, or that he's otherwise not in possession of

1   any non-exempt assets.  And for the reasons set forth in

2   the motion, we believe that a receivership is the only

3   way to collect money pursuant to this judgment, which is

4   now final.  And there is no legal reason why it

5   shouldn't be executed and satisfied, Your Honor.

6                   **THE COURT:**  Thank you.

7                   Mr. Floyd, your response.

8                   **MR. FLOYD:**  Judge, I believe I filed an

9   objection based on that I believe, under the law, that

10  this Court has lost plenary power to continue with this

11  case in the manner in which it's continuing.  If the

12  parties want to file receivership, they can file it in

13  this court or any court wherever the assets are, but it

14  has to be filed as a separate and stand-alone case.  So

15  this Court, in my opinion, does not have plenary power

16  and I'm objecting to any further hearing on that matter.

17  So I would like a ruling on that objection.

18                  **THE COURT:**  I am going to overrule that

19  objection.  The Court's jurisdiction does continue for

20  enforcement of the judgment, and that's the basis.  My

21  understanding is that that's the basis of the

22  receivership, is for enforcement of the judgment.

23                  **MR. FLOYD:**  The second issue is that I

24  presume that Mr. Yarborough's statements were argument

25  of counsel.  If he's testifying to those matters, there

1   is simply no evidence whatsoever as to anything that he

2   said.  He made some arguments, but there is not a

3   scintilla of evidence of any non-exempt assets.  As he

4   said, they have done extensive discovery, and they found

5   not a scintilla of non-exempt assets.

6           The only asset they found was a bank

7   account that Mr. Floyd, Philip Floyd, opened for his two

8   daughters when they were minors and that they deposited

9   their babysitting money in -- there is an affidavit on

10  file with that -- that that was their money, and they

11  garnished those accounts and dismissed the garnishment,

12  and it was less than a thousand dollars.  I don't

13  remember.  It was probably closer to $500.

14          So, technically, possibly, there is less

15  than a thousand dollars of non-exempt assets that

16  belongs to Philip Floyd's two daughters, who are now

17  adults.  They were minors at the time.  He had just not

18  removed his name as a signature on the account.  And

19  they -- as Mr. Yarborough stated, they dismissed the

20  accounts.  So there is not a scintilla of evidence

21  before this Court that there is any non-exempt assets.

22          Income, if any, has not been shown.  But

23  income -- wages cannot be garnished or taken by a

24  receiver.  They don't have the power to take wages in

25  any type of case in the state of Texas.  And there is no

```
 1   showing whatsoever that he has any wages.
 2               So I would suggest to the Court that the
 3   Court cannot rely solely on the argument of counsel.
 4   They didn't bring any witnesses in here.  The movants or
 5   the claimants in this case could have come here and
 6   testified, but they chose not to do so.  They could have
 7   testified that Mr. Floyd worked for them for many years
 8   and they know that he's got millions of dollars or
 9   something.  That would all have been false, but if they
10   know it to be true -- if they had any knowledge
11   whatsoever of any non-exempt assets, they should have
12   come in and testified.
13               As Mr. Yarborough argued, they tried a
14   turnover order.  The constable went to Mr. Floyd's house
15   and found nothing.  They found no assets.  All this is
16   is harassment, and it's an intention to abuse the
17   process to harass Mr. Floyd.
18               He has no duty to pay a debt if he doesn't
19   have the money.  And to say that he is doing something
20   wrong because he doesn't have the money, there is an
21   ulterior motive for all of this.  This is simply
22   harassment of Mr. Floyd because they know he doesn't
23   have the money.  If they had -- and the two witnesses
24   for the movants in this case could have come here and
25   testified -- but they would have to testify falsely --
```

1   if they thought there was any non-exempt assets.  They

2   have known him for many years.  That came out in the

3   case.  They know he doesn't have any money to pay the

4   debt.

5                    And the second thing, we object to the

6   appointment of this gentleman as the receiver.  One,

7   this was just filed on Friday, and, two, there is no

8   evidence whatsoever that -- well, he's here today.  He

9   can testify for himself if he wants to take the stand.

10  But there is no evidence whatsoever that he has any

11  qualifications until he takes the stand.  I am objecting

12  to this document that they filed on -- that the movants

13  filed on Friday, the 17th, requesting a substitution of

14  a receiver.

15                    And, thirdly, the receiver lives in

16  Houston.  This case is here in Collin County.  To have

17  to appoint a receiver 250 miles away is just going to be

18  a burden on everybody, and it's going to serve no useful

19  purpose.

20                    And for those reasons, I object to any

21  further continuance in the appointment of a receiver,

22  and I think the case law is, clearly, that they have not

23  met their burden, not a scintilla of non-exempt assets.

24  That's the first hurdle that has to be.  There has to be

25  some evidence of non-exempt assets.  And they made no

1    attempt today to do it.

2            Thank you.

3            **THE COURT:**  Thank you.

4            Mr. Yarborough, anything further in

5    support of the application?

6            **MR. YARBOROUGH:**  Yes, Your Honor.  Very

7    briefly.

8            Mr. Floyd just said to this Court that

9    there -- that the only bank account that we identified

10   in post-judgment discovery was -- had the name of one of

11   Mr. Floyd's daughters on it.  That is categorically not

12   correct.  If you read the motion, there are six

13   different Wells Fargo bank accounts controlled by

14   Mr. Floyd and which Mr. Floyd is a signatory, which are

15   proper for receiverships that are listed there.  And

16   each one is identified by account number.  None of this

17   evidence has been contested.  So for Mr. Floyd to say

18   there isn't a scintilla of evidence is not accurate.

19           And, second, Mr. Floyd misstated the law

20   about wages here.  The evidence in support of the motion

21   for non-exempt assets demonstrates there are positive

22   balances in these bank accounts.  Once wages or any

23   other income hit a bank account, it's non-exempt.  It's

24   not wages anymore.  It's only wages when it's still a

25   paycheck or if it's garnished directly from an employer.

1           Furthermore, Your Honor, Mr. Floyd does
2  not say in his responses or tell the Court here today
3  that these so-called wages are W-2 wages, because
4  they're not.  They are contractual payments for a
5  business run by Mr. Floyd that he splits with a business
6  partner based on accounts under management.  All that is
7  to say, Your Honor, that we've easily met our burden.
8           And I just want to very briefly respond to
9  the comment about the turnover order.  This Court
10  entered two different orders to execute this judgment
11  already.  It entered a writ of execution, authorizing a
12  sheriff or a constable to visit Mr. Floyd, which
13  happened.  And then it also issued a turnover order, and
14  that's the one Mr. Floyd did not comply with.  There is
15  nothing in the record stating that he actually came to
16  the sheriff's office and complied with that order.  And
17  for that reason, Your Honor, we've exhausted all of our
18  other options.  There is no legal reason, such as a
19  supersedeas bond, for this receiver not to be appointed,
20  and because Mr. Floyd hasn't paid a dime on a judgment
21  that is now final, we believe that this is warranted
22  here.
23           **THE COURT:**  And with respect to the
24  argument that this receiver is in Houston, how does that
25  impact the burdens and the efficiency of any

1    receivership?

2              **MR. YARBOROUGH:**  Your Honor, because most

3    of the assets in question here are financial assets,

4    both in terms of bank accounts as well as other

5    financial accounts, the likelihood is that a receiver

6    based in Texas -- anywhere in Texas would be equally

7    qualified to carry out his duties here.  Mr. Kretzer

8    handles cases around the state.  He is familiar with

9    North Texas.  He actually clerked for a federal judge in

10   the Eastern District.  And we don't believe that there

11   will be any additional burden.  And, furthermore, the

12   burden will be on the -- will only reduce the recovery,

13   and we believe that it will de minimis in this case.

14             **MR. FLOYD:**  May I respond to some of that,

15   Your Honor?

16             **THE COURT:**  Mr. Floyd.

17             **MR. FLOYD:**  First off, he's, more or less,

18   admitted there are no funds in any accounts.  They

19   have -- the claimants have done all the post-judgment

20   discovery.  They have received every single bank

21   account.  He cannot say that there's a thousand dollars

22   in all of the accounts, including the ones that

23   Mr. Philip Floyd had control over.  And there are no

24   accounts existing today that he has any control over

25   that have any funds in them.

1           The other matter is that if a receiver is
2    appointed, the receiver is supposed to be an officer of
3    the Court, not an extension of the claimants.  And the
4    proposed order is excessive.  It, in effect, is -- they
5    are taking -- claimants are saying, "Judge, we want to
6    tell you what we want the receiver to do."  If you
7    receive -- read that proposed order, all it is, "We are
8    telling the judge to tell the receiver to do what we
9    have told her to tell him to do."

10          THE COURT:  I mean, isn't that every
11   proposed order, Mr. Floyd?

12          MR. FLOYD:  I'm sorry.  What?

13          THE COURT:  Isn't that every proposed
14   order?

15          MR. FLOYD:  I've never seen a proposed
16   order that tells the receiver what he is to do
17   specifically.  If a receiver is qualified to be a
18   receiver, he should know what to do.  He shouldn't be
19   limited and controlled by an order telling him this is
20   exactly what you've got to do.

21          It's overly broad, and it has no -- it
22   just doesn't comply with what I believe the standard is
23   for appointing a receiver.  It's not specific.  It's
24   broad.  It gives him -- if there are assets.  And they
25   have not shown that there are any assets, and they will

```
 1   never be able to show there are assets.
 2                   MR. YARBOROUGH:  Your Honor, may I briefly
 3   respond with regard to the proposed order?
 4                   THE COURT:  I will give you the final
 5   word, Mr. Yarborough, since it's your application.
 6                   MR. YARBOROUGH:  Thank you, Your Honor.
 7                   All I would like to say about the proposed
 8   order is that the receiver cannot take action without
 9   the authority of the Court.  And so what this proposed
10   order intends to do is provide the receiver with the
11   range of authorizations necessary to carry out his or
12   her duties.
13                   And, again, as I said at the opening of
14   this hearing, though we recommend Mr. Kretzer and have
15   identified him as a qualified and experienced receiver
16   for this case, we are not opposed to a local receiver
17   being appointed if Your Honor has someone else in mind.
18                   MR. FLOYD:  Judge, if the Court is
19   considering this person as receiver, I would like to
20   question him.
21                   THE COURT:  On what basis?
22                   MR. FLOYD:  On the basis to determine his
23   qualifications.  You have received no evidence as to his
24   qualifications today.
25                   THE COURT:  I don't believe that is
```

1    necessary.

2              I'll take the motion under advisement and

3    review the proposed orders of the parties.

4              If there is nothing further, we'll go off

5    the record.

6              **MR. FLOYD:**  Thank you.

7              **MR. YARBOROUGH:**  Thank you, Judge.

8         (The proceedings were concluded at 10:50 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     STATE OF TEXAS

2     COUNTY OF COLLIN

3        I, Denise Carrillo, Official Court Reporter in and

4     for the 471st District Court of Collin, State of Texas,

5     do hereby certify that the above and foregoing contains

6     a true and correct transcription of all portions of

7     evidence and other proceedings requested in writing by

8     counsel for the parties to be included in this volume of

9     the Reporter's Record in the above-styled and numbered

10    cause, all of which occurred in open court or in

11    chambers and was reported by me.

12       I further certify that this Reporter's Record of

13    the proceedings truly and correctly reflects the

14    exhibits, if any, offered by the respective parties.

15       WITNESS MY OFFICIAL HAND this the 28th day of

16    March, 2023.

17                              /s/ Denise Carrillo
                                Denise Carrillo, CSR, RMR, CRR
18                              Texas CSR #9269
                                Official Court Reporter
19                              471st District Court
                                2100 Bloomdale Rd., Suite 30276
20                              McKinney, Texas 75071
                                Telephone:  972.547.1803
21                              dcarrillo@co.collin.tx.us
                                Expiration:  5/31/2024
22

23

24

25

```
 1                   REPORTER'S RECORD

 2                  VOLUME 1 OF 1 VOLUME

 3            TRIAL COURT CAUSE NO. 471-02423-2021

 4

 5   PHILIP FLOYD,                )  IN THE DISTRICT COURT OF
                                  )
 6                                )
               Plaintiff,         )
 7                                )
     VS.                          )  COLLIN COUNTY, TEXAS
 8                                )
                                  )
 9   MMWKM ADVISORS, LLC          )
     AND ELIAS DRAGON,            )
10                                )
                                  )
11             Defendants.        )  471ST JUDICIAL DISTRICT

12

13

14            ------------------------------

15                    STATUS CONFERENCE

16            ------------------------------

17

18

19

20

21      On the 9th day of June, 2023, the following proceedings

22   came on to be heard in the above-entitled and numbered cause

23   before the Honorable Raymond Wheless, Judge presiding, held in

24   McKinney, Collin County, Texas;

25         Proceedings reported by machine shorthand.
```

1                         A P P E A R A N C E S

2    FOR THE PLAINTIFF:

3         Mr. Douglas T. Floyd
          SBOT: #07181700
4         ATTORNEY AT LAW
          6521 Preston Road
5         Suite 100
          Plano, Texas 75024
6         Phone: 214-704-7081

7

     FOR THE DEFENDANTS:
8
          Mr. D. Patrick Yarborough
9         SBOT: #24084129
          FOSTER YARBOROUGH, PLLC
10        917 Franklin Street
          Suite 220
11        Houston, Texas 77002
          Phone: 713-331-5254

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    I N D E X

 2                   VOLUME 1

 3              (STATUS CONFERENCE)

 4                                            Page

 5   JUNE 9, 2023

 6

 7   Proceedings . . . . . . . . . . .        4

 8   Adjournment . . . . . . . . . . .        17

 9   Court Reporter's Certification. . . .    18

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2               THE COURT:  All right.  This is Case Number

 3   471-02423-2021, Philip Floyd v. MMWKM Advisors.

 4               I'm Ray Wheless sitting for Judge Bouressa this

 5   morning.

 6               And for the Plaintiff, Mr. Floyd;

 7               And Mr. Hackney for the Defense.

 8               Is that right?

 9               MR. YARBOROUGH:  Patrick Yarborough.

10               THE COURT:  Okay.  It says here "Status

11   Conference."  What is it that we need to talk about?

12               MR. YARBOROUGH:  Well, Your Honor, we've had

13   since November of 2022 a pending Motion For Postjudgment

14   Receivership on file.  We had a hearing on February 27th, I

15   believe.  And at that hearing, Plaintiff, who's the judgment

16   debtor in this case, did not have -- expressed no intention on

17   the record of superseding the judgment.  And so far, judgment

18   creditors, my clients have obtained writs of garnishment, filed

19   abstracts of judgment, have received a turnover order, and

20   executed on a writ of execution with a sheriff.  And

21   unfortunately, what we really need in this case is a

22   receivership order, because we do understand through evidence

23   that's been presented to the Court that there is cash flow that

24   the judgment debtor is obtaining, but we need a professional,

25   qualified receiver, whether here in Collin County or our
```

1   proposed receiver Seth Kretzer, whose credentials are in the

2   record and who Judge Bouressa indicated didn't need to even be

3   questioned at the last hearing.  We need a qualified receiver

4   to execute on this judgment that judgment debtor has not

5   offered to pay a single cent of.  And so that's why we are

6   here.

7               We are here for a status conference just to

8   follow up on the entry of the order.  I do have the propose

9   order here, which we can discuss in detail if Mr. Floyd has any

10  objections to specific items, but I do not believe there's any

11  grounds for denying it at this time.

12              THE COURT:  You are opposed to the receivership?

13              MR. FLOYD:  I'm opposed to the receivership.  I

14  filed objections.  Receiverships are only appropriate when

15  there's assets have been identified.  There've been no

16  identified assets.

17              The judgment debtor is judgment proof.  They

18  know that.

19              They have done extensive postjudgment discovery.

20  They have not found a penny.  As counsel stated, they had an

21  execution.  They had garnishment actions.  There's not a penny

22  out there.  And now they are saying they think he has income

23  from work.  Well, you can't garnish or attach income, and he

24  doesn't have any regular wages coming in, but they think they

25  can garnish his wages.  They can't do it.  So they need to show

1  assets.  And I cited the case law.

2              For one, I said the Court lost plenary

3  jurisdiction 30 days after the final judgment was entered, and

4  they have to refile it as a writ of --

5              THE COURT:  It's up on appeal now?

6              MR. FLOYD:  Yes.  It's up on appeal.

7              So they can refile like a garnishment action.

8  You refile it as a new case in this court, but you don't attach

9  it to this case -- to this pending case.  So I think it's

10  improper the way they've done it to file it just as a Motion

11  For Appointment of a Receiver.

12             But it's clear you have to show some assets that

13  a receiver can go after.  The speculation that he might have

14  income in the future is speculation.  That's not the purpose of

15  a receiver.

16             THE COURT:  It's not an ongoing business?

17             MR. FLOYD:  No.

18             THE COURT:  It's closed down or what?

19             MR. FLOYD:  He's a self-employed person that

20  works as a financial planner.  And anybody that he would

21  receive, if he was receiving any money, is exempt from

22  garnishment or a receivership.

23             THE COURT:  Yes, sir.

24             MR. YARBOROUGH:  If I may reply, Your Honor,

25  first of all, Judge Bouressa dismissed out of hand this idea

1  that this is an improper venue or proper case to move for a

2  receivership.  As you well know, a Court retains jurisdiction

3  of writs matters in order to enforce its judgments.  This is a

4  matter for the Court enforcing a judgment.  And for that

5  reason, Judge Bouressa, on the record at our last hearing,

6  dismissed that concern out of hand.

7                 Now to go to the principal concern.  Mr. Floyd,

8  who represents Mr. Floyd, has just admitted that there are no--

9  there is no wage income involved here.  We have a self-employed

10 person who does not receive wages.  And when money assets go

11 into the bank account, which we've proven through affidavits

12 and evidence filed in this court exists and that are owned by

13 the judgment debtor, which are assets subject to collection,

14 there are assets here.  What we need is a qualified receiver to

15 actually run that down with the authority, authorized by the

16 Court, to pursue the Court's judgment.  And for that reason, we

17 need a receivership.  Here, there's no question.  He said there

18 wasn't a single penny.  There's more than a penny in multiple

19 bank accounts which have all been file of record in our Motion

20 For Receivership.

21                 We've done the work to identify assets.  There

22 is assets to be had.  There is no wage income.  There is no

23 concern about garnishing wages.  What we are seeking is

24 absolutely nonexempt assets that are either in bank accounts or

25 other nonexempt property.

1              THE COURT:  These aren't current wages?

2              MR. YARBOROUGH:  Mr. Floyd, the judgment debtor

3    in this case, is a financial planner working as a 1099 for

4    another company as a contractor.  He receives fee income

5    directly from clients.  None of that is wages.  This is all

6    nonexempt assets.  And they come every single month.  We

7    presented evidence about the income stream.

8              There's no way for us to obtain a judgment,

9    which we've -- we've gone through arbitration.  We won

10   arbitration.  Mr. Floyd sought to vacate the arbitration award.

11   That failed.  He sought a Motion For New Trial to revisit the

12   issue.  That failed.  Mr. Floyd has also asked for findings of

13   fact and conclusions of law, which the Court issued.  Now it's

14   on appeal.

15             At the last hearing, right out of the gate,

16   Judge Bouressa asked Mr. Floyd -- his counsel -- whether he was

17   going to have this judgment superseded.  He has no intention to

18   do so.

19             THE COURT:  How much is the judgment?

20             MR. YARBOROUGH:  The judgment is for

21   approximately $1.4 million, Your Honor.

22             THE COURT:  It's pretty hard to supersede that,

23   isn't it?

24             MR. FLOYD:  A little hard when you have no

25   assets.

 1          MR. YARBOROUGH:  And, Your Honor, Mr. Floyd is a

 2  very capable attorney.  He's exhausted all of his options.

 3  He's made the decision, as a qualified professional, not to

 4  seek to supersede this judgment.  And at this point, we have no

 5  other viable remedy.

 6          THE COURT:  What would the receiver do?  How

 7  would the receiver actually mechanically carry this out?

 8          MR. YARBOROUGH:  So what the receiver needs to

 9  do is something that is impractical with a writ of garnishment

10  case.  In a writ of garnishment case, what they do is the bank

11  immediately freezes the accounts and turns over the assets,

12  which are already subject to a turnover order, Your Honor.  In

13  this case, we basically got all the rights that this

14  receivership would grant us, except we don't have the

15  appointment of the person with an ongoing responsibility to the

16  Court to collect the judgment, by identifying bank accounts,

17  engaging in additional receivership discovery, which is

18  independent, done on behalf of the Court and done on behalf of

19  the judgment creditor to identify nonexempt assets, which we

20  understand are continually rolling in.

21          And this is really just a matter of

22  practicalities.  The reason why the receivership statute exists

23  is exactly for this issue.  We can't be -- it's not even really

24  appropriate for us to continually file writ of garnishment case

25  after writ of garnishment case when instead we can appoint a

1  receiver who is qualified, who is very experienced to carry out

2  the duties on behalf of the Court in an appropriate and lawful

3  manner.

4          And what we are asking for here, Judge, is

5  relief.  The judge -- excuse me.  This Court has rights and

6  obligations to enforce its judgments.  And here, judgment

7  creditors have done everything in their power to collect on

8  this judgment.  We haven't been offered anything in

9  satisfaction of the judgment so far.  And for that reason, Your

10  Honor, it's overdue, frankly, to appoint a receiver in order to

11  make something happen.

12          THE COURT:  Mr. Floyd, why is this not an

13  appropriate remedy?  I mean, they've got a judgment.  They are

14  entitled to their money under the law.  Why is receivership not

15  appropriate?

16          MR. FLOYD:  First off, they argued the same

17  identical argument in February and the judge declined to sign

18  the order.  Now we've been February, March, April, May.  Here

19  we are in June, five months later, and they want a status

20  conference asking her why didn't you sign the order back in

21  February.  Well, she didn't sign it.  She may have forgot to do

22  it.  She may have bought the argument that she doesn't have the

23  power to sign it both the way they filed it.  Or, better, in

24  order to appoint a receiver, you have to have something to

25  receive.

1        They are saying there's nothing to receive.

2  There are no assets.  They've gone through their attachments

3  and everything.

4        THE COURT:  He just said there's some bank

5  accounts with some money in them.

6        MR. FLOYD:  If there were, they would just

7  garnish them.  There are none.  Ask them.  There are none with

8  money in them.  If there was money in them with his name on

9  them, they would just garnish them.

10        THE COURT:  What would be the harm in appointing

11  a receiver?

12        MR. FLOYD:  It's harassment.  It's pure

13  harassment.  That's all it is.  And the law is quite clear.

14  Assuming argumentatively that Mr. Floyd has income,

15  commissions, working as a financial planner, those are treated

16  as wages.  They are not treated as nonexempt assets.

17        THE COURT:  He says they are 1099.  So they are

18  not current wages.  That's his argument.

19        MR. FLOYD:  Commissions are treated as wages.

20        THE COURT:  That's what I thought.

21        MR. YARBOROUGH:  Well, Your Honor, they are not

22  commissions at all.  Mr. Floyd is an independent business

23  person in association with a wealth management firm which acts

24  as, basically, a back office and a bit of support.  This person

25  is an independent business owner who receives income into his

1  bank account on a monthly basis, which has been established in

2  the court and not disputed.  He claims that this is somehow

3  wages.  It's simply not.  Once income hits a bank account, it's

4  nonexempt, Your Honor.

5           And Mr. Floyd made a misrepresentation to Your

6  Honor that I must address.

7           THE COURT:  Okay.  Go ahead.

8           MR. YARBOROUGH:  Here in this court, Mr. Floyd

9  speculated that Judge Bouressa may have determined that she

10 didn't have the power to enter this order.  She said exactly

11 the opposite on the record at our last hearing.  And this is

12 indicative, Your Honor, of the attitude that we've been

13 encountering, which, essentially, is an attitude of impunity.

14 And what we are asking for here, Your Honor, is an order to

15 empower a receiver to collect the assets that are clearly not

16 exempt in bank accounts as they come in.

17           It's impractical for us to file a new filing fee

18 in a new case for each and every bank that Mr. Floyd is using

19 when clearly he's taking the money out on a monthly basis.  And

20 that's normal.  He's spending money that he earns.  The issue

21 here is that we have no remedy.  We've exhausted every other

22 device under the law in terms of writs and orders from this

23 Court.  And if there are no assets, as Mr. Floyd claims, and

24 there's nothing to collect, then there would be no harm, Your

25 Honor.  This is not sought for harassment.  This is merely

1  sought to vindicate this Court's judgment.  And this Court has

2  a right and indeed an obligation to enforce its orders and

3  judgments.

4          MR. FLOYD:  If I may, Judge.

5          THE COURT:  Yes, sir.

6          MR. FLOYD:  One, you appoint a receiver --

7  generally, a court appoints a receiver because they know who

8  that person is.  Somebody that you know how it works.  You

9  present your name.  I would like to be a receiver.  This is my

10  credentials.  They haven't done that.  They are asking to

11  appoint an unknown person that lives in Houston.  I objected on

12  that basis.  An unknown person that lives in Houston with no

13  credentials submitted that I'm aware of --

14          THE COURT:  Was this person known to Judge

15  Bouressa?

16          MR. YARBOROUGH:  Your Honor, may I respond?

17          MR. FLOYD:  Every time I get to talking, I get

18  interrupted.

19          THE COURT:  Go ahead, Mr. Floyd.

20          MR. FLOYD:  I'm getting old.  I can't carry all

21  my thoughts forever.  So we got an unknown person they are

22  asking to appoint.

23          There are no assets.  As counsel has stated,

24  they've got 800 pages of bank records.  Not a dollar is

25  available has gone through that account in over a year.  They

1  know it.  They received all of that.  All they want is a friend

2  of theirs -- judgment creditors want a friend of theirs to go

3  out and essentially do everything that was done prior to in the

4  postjudgment discovery and try and find a bank account that

5  money is going through, when, as of a year ago -- and I can

6  represent there is no bank account since then that any money

7  has gone through that is owned by the judgment debtor.

8         Now, they could verify this without a receiver.

9  So there are no assets to receive.  What they wanted to do is

10  to try and create, essentially, an extrajudicial garnishment of

11  any income that he may have, whether a 1099 or wages.  It

12  doesn't matter.  Commissions, he works on commission-type work.

13  Anything that's commission that comes to him, if it doesn't go

14  in a bank account, it can't be attached.

15         THE COURT:  Who is this receiver -- this person

16  you are proposing?

17         MR. YARBOROUGH:  Your Honor, I brought Seth

18  Kretzer, a very qualified, very experienced receiver who served

19  in a federal clerkship in the Eastern District of Texas right

20  in the Court's backyard, who is an honorable good receiver, who

21  has the best credentials of anybody I'm aware of in the state.

22  He's succeeded in obtaining multimillion dollar recoveries in

23  satisfaction of court judgments as an officer of the court and

24  as an appointee of courts around this state.

25         It's unfair to say that Judge Bouressa was not

1    submitted any information about Mr. Kretzer.  I supplied in my

2    briefing and in my letter to the Court with exhibits attached

3    Mr. Kretzer's resume, Mr. Kretzer's fact sheet about his

4    recoveries.  I brought him here at judgment creditors' expense

5    to testify to the Court or to be examined by Mr. Floyd, should

6    the Court allow it.  He was available.  The Court did not

7    question his credentials.  She had them submitted in the

8    record.  And there was no reason that the Court saw, at that

9    time, to engage in that process.  But it's simply untrue and

10   frankly offensive for him to say that this is a person who is

11   completely unknown to everyone, whose credentials have not been

12   submitted, who Mr. Floyd has not seen.  We submitted them to

13   the Court.  We brought him here in person.  And not only that,

14   but he is a person of unimpeachable integrity.  There's no

15   reason to question.

16            All that said, if Your Honor appoints a receiver

17   who you have appointed in the past that you are familiar with,

18   judgment creditors have no objection to that, but what we

19   really need here is an ability to collect on the nonexempt

20   assets we've proven to this Court exist.

21            Mr. Floyd just told this Court something that

22   I'm glad was on the record, because it was false and

23   demonstrably so.  He said there was one bank account and no

24   money has gone through it in a year.  We identified multiple

25   bank accounts at Wells Fargo Bank, all of which had income very

1   recently from when we obtained that postjudgment discovery.

2          That said, the game doesn't end once we take

3   one shot.  The judgment is the Court's judgment.  The judgment

4   is an obligation of the Court to enforce.  The rule of law

5   depends on us seeing these matters through.

6          THE COURT:  Mr. Floyd, anything else?

7          MR. FLOYD:  Yes.  The record is very clear that

8   five months ago when they mentioned this gentleman's name that

9   they wanted appointed as a receiver, I asked to examine him.

10          The judge says:  No.  I'm not going to allow you

11   to examine him.

12          At that point in time, all we had was his name.

13   There was no backup credentials of his qualifications.  All we

14   had was his name.

15          And the very fact that the judge has not signed

16   the order for five months after hearing everything that you

17   heard today has got to be indicative of something.

18          THE COURT:  Well, to be honest with you, it's

19   not ex parte for judges to consult with one another; and Judge

20   Bouressa assaulted with me about this.  And she told me that

21   she had been inclined to grant this.  She just hadn't gotten

22   around to it.  So I'm going to go ahead and grant it.

23          This receiver, if he's as knowledgeable and

24   experienced as been represented, then he will know, legally,

25   what he can seize and what he can't seize.  So if Mr. Floyd's

1   money is not something that can be subject to execution, he

2   wouldn't take it.

3             MR. FLOYD:  Well, Judge, let me put on the

4   record again that I object to this order.  It is not a standard

5   order.  It is an order drafted by the judgment creditor in

6   detail and it exceeds the power.  It takes power away from the

7   Court.  And it tells a receiver what specifically to do.

8   Really, he's working for the judgment creditor because he's a

9   friend of theirs, and it's an improper order.  It's overly

10  broad.  It limits his power and constricts his power and

11  expands his power beyond what the law would allow.  So the

12  order is overly broad.

13            THE COURT:  All right.  The objection is

14  overruled, and I've signed the order.  So the receiver is

15  appointed, and I've signed the order.

16            Anything else today?

17            MR. YARBOROUGH:  No, Your Honor.

18            MR. FLOYD:  No, Your Honor.

19            THE COURT:  All right.  Thank you, gentlemen.

20            (ADJOURNMENT).

21

22

23

24

25

1                      REPORTER'S CERTIFICATE

2    THE STATE OF TEXAS )
     COUNTY OF COLLIN )
3
     PHILIP FLOYD                    ) IN THE DISTRICT COURT OF
4    VS.                             )   COLLIN COUNTY, TEXAS
     MMWKM ADVISORS, LLC             )
5    AND ELIAS DRAGON                ) 471ST JUDICIAL DISTRICT

6         I, LaTresta Ginyard, Deputy Court Reporter in and for the

7    471st District Court of Collin County, State of Texas, do

8    hereby certify that the above and foregoing contains a true and

9    correct transcription of all portions of evidence and other

10   proceedings requested in writing by counsel for the parties to

11   be included in this volume of the Reporter's Record, in the

12   above-styled and numbered cause, all of which occurred in open

13   court or in chambers and were reported by me.

14        I further certify that this Reporter's Record of the

15   proceedings truly and correctly reflects the exhibits, if any,

16   admitted by the respective parties.

17        WITNESS MY OFFICIAL HAND this the 15th day of June, 2023.

18

19

20

21                         __/s/LaTresta Ginyard_____
                           LaTresta Ginyard, Texas CSR 8665
22                         Expiration Date:  11/2023
                           Deputy Court Reporter
23                         471st District Court
                           2100 Bloomdale Road
24                         Collin County, Texas
                           McKinney, Texas 75071

25

CAUSE NO. 471-02423-2021

| PHILIP FLOYD, | § | IN THE 471ˢᵗ JUDICIAL |
|---|---|---|
| | § | |
| *Plaintiff – Arbitration Respondent –* | § | |
| *Judgment Debtor,* | § | |
| | § | |
| v. | § | DISTRICT COURT |
| | § | |
| MMWKM ADVISORS, LLC, Series ERD I, | § | |
| and ELIAS DRAGON, | § | |
| | § | |
| *Defendants – Arbitration Claimants –* | § | COLLIN COUNTY, TEXAS |
| *Judgment Creditors.* | § | |

## ORDER APPOINTING RECEIVER *NUNC PRO TUNC*

CAME ON to be heard the Motion for Post-Judgment Receivership of Defendants –

Arbitration Claimants – Judgment Creditors MMWKM Advisors, LLC, Series ERD I

("Creditors"); whereupon, the Court, after a review of the papers herein on file, became of the

opinion that a Receiver should be appointed to take possession of and sell the leviable assets of

Philip Floyd ("Judgment Debtor").

Based on the pleadings, the evidence and the argument of counsel, the Court finds that the

Judgment Debtor owns non-exempt property and that there exists an unpaid final judgment against

him. Notwithstanding any contrary language herein, this order does not compel turnover of

Judgment Debtor's homestead or other exempt property.

IT IS THEREFORE, ORDERED, ADJUDGED, and DECREED by this Court that Mr.

Seth Kretzer, Esq., 917 Franklin Street, 6ᵗʰ Floor, Houston, Texas 77002, is hereby appointed

Receiver in this case pursuant to the Texas Turnover Statute with the power and authority to take

possession of and sell all leviable property of Judgment Debtor, including, but not limited to the

following non-exempt property: (1) all documents or records, including financial records, related

to such property that is in the actual or constructive possession or control of the

Order Appointing Receiver                                                                Page 1 of 8

Judgment Debtor; (2) all financial accounts (bank accounts), certificates of deposit, money-market accounts, accounts held by any third party; (3) all securities not held in retirement accounts; (4) all real property, equipment, vehicles, boats, and planes; (5) all safety deposit boxes or vaults; (6) all cash; (7) all negotiable instruments, including promissory notes, drafts, and checks; (8) all causes of action or choses of action; (9) all contract rights, whether present or future; and (10) all accounts receivable; and that all such property shall be held in *custodia legis* of said Receiver as of the date of this Order.

Judgment Debtor is **ORDERED** to turnover to the Receiver within ten (10) days from the Judgment Debtor's receipt of a copy of this Order: 1) the documents listed below, together with all documents and financial records which may be requested by the Receiver; 2) all checks, cash, securities (stocks and bonds) not held in retirement accounts, promissory notes, documents of title, and contracts owned by or in the name of the Judgment Debtor:

Any and all records, as hereinafter described, concerning affairs of the Judgment Debtors; unless otherwise noted, for the period January 1, 2020 through the present:

1. Monthly statements for every financial institution account in which Philip Floyd has been a signatory or owner since January 1, 2020;

2. Cancelled checks and wire transfers for every financial institution account in which Philip Floyd has been a signatory or owner since January 1, 2020;

3. Copies of the articles of incorporation, Secretary of State charters, operating agreements, membership agreements, and all documents of creation and ownership of any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity Philip Floyd currently holds or has held an interest since January 1, 2020;

4. Federal income and state franchise tax returns for Philip Floyd and any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

5. All motor vehicle Certificates of Title owned or leased by Philip Floyd or any limited liability company, professional corporation, corporation,

Order Appointing Receiver                                                                 Page 2 of 8

Copy from re:SearchTX

general partnership, limited partnership, trust or any other corporate entity
in which Philip Floyd currently holds or has held an interest since January
1, 2020;

6.  Stock certificates and bonds owned by Philip Floyd that are not held in a
retirement account and any limited liability company, professional
corporation, corporation, general partnership, limited partnership, trust or
any other corporate entity in which Philip Floyd currently holds or has held
an interest since January 1, 2020;

7.  Promissory notes owned by Philip Floyd or any limited liability company,
professional corporation, corporation, general partnership, limited
partnership, trust or any other corporate entity in which Philip Floyd
currently holds or has held an interest since January 1, 2020;

8.  Bills of sale owned by Philip Floyd or any limited liability company,
professional corporation, corporation, general partnership, limited
partnership, trust or any other corporate entity in which Philip Floyd
currently holds or has held an interest since January 1, 2020;

9.  Real property deeds and deeds of trust (regardless of date), owned or interest
held by Philip Floyd or any limited liability company, professional
corporation, corporation, general partnership, limited partnership, trust or
any other corporate entity in which Philip Floyd currently holds or has held
an interest since January 1, 2020;

10.  Business journals, ledgers, accounts payable and receivable files belonging
to Philip Floyd or any limited liability company, professional corporation,
corporation, general partnership, limited partnership, trust or any other
corporate entity in which Philip Floyd currently holds or has held an interest
since January 1, 2020;

11.  Pledges, security agreements and copies of financial statements owned by
Philip Floyd or any limited liability company, professional corporation,
corporation, general partnership, limited partnership, trust or any other
corporate entity in which Philip Floyd currently holds or has held an interest
since January 1, 2020;

12.  State sales tax reports filed by Philip Floyd or any limited liability company,
professional corporation, corporation, general partnership, limited
partnership, trust or any other corporate entity in which Philip Floyd
currently holds or has held an interest since January 1, 2020;

13.  Any other record or document evidencing any ownership to real or personal
property or to any debt owed or money had (regardless of date) owned or
interest held by Philip Floyd or any limited liability company, professional
corporation, corporation, general partnership, limited partnership, trust or

Copy from re:SearchTX

any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

14. All personal property returns filed with any taxing authority, including but not limited to any Central Appraisal District, filed by Philip Floyd or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

15. All documents listing or summarizing property owned by or held by Philip Floyd or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020; and

16. Credit applications and other documents stating Philip Floyd's financial condition since January 1, 2020.

Judgment Debtor, Philip Floyd, is **ORDERED** to identify and turn over to the receiver all interests of the Judgment Debtor in any business or venture, including limited liability companies and limited partnerships, and all agreements, stock certificates and other documents pertaining to the Judgment Debtor's ownership in the business or venture. Judgment Debtor is **ORDERED** to continue, until the Judgment in this cause is fully paid, to turnover to the Receiver at the Receiver's address all checks, cash, securities, promissory notes, documents of title, and contracts within three (3) days from the Judgment Debtor's receipt and possession of such property, if, as and when Judgment Debtor becomes in receipt and possession of any such property. Paychecks for current wages are exempt from this order.

In light of the refusal of Judgment Debtor to pay the judgment, the Receiver is authorized to provide notice of this order, or any discovery requests, or any other document or motion, to Judgment Debtor, by delivering such notice and order and discovery requests in any of the following manner: (1) to the Judgment Debtor's home address at by first-class U.S. Mail, without requiring signature or restricted delivery; (2) to Judgment Debtor's attorney, by fax, U.S. Mail or

email, unless he or she indicates that he or she no longer represent the Judgment Debtor, or (3) by email to the Judgment Debtor's email address.

In addition to the powers of the Receiver set forth herein, the Receiver shall have the following rights, authority and powers with respect to the Judgment Debtor's property, to: 1) collect all accounts receivable of Judgment Debtor and all rents due to the Judgment Debtor from any tenant; 2) to change locks to all premises at which any nonexempt property is situated; 3) direct the delivery of Judgment Debtor's mail and the mail of any business of the Judgment Debtor to the Receiver's address and open all mail directed to Judgment Debtor and any business of the Judgment Debtor; 4) endorse and cash all checks and negotiable instruments payable to the Judgment Debtor, except paychecks for current wages; 5) hire a real estate broker to sell any real property and mineral interest belonging to the Judgment Debtor; 6) hire any person or company to move and store the property of the Judgment Debtor; 7) (but not the obligation) to insure any property belonging to the Judgment Debtor; 8) obtain from any financial institution, bank, credit union, credit bureau, savings and loan, title company, or any other third party, any financial records belonging to or pertaining to the Judgment Debtor; 9) obtain from any Texas state agency or official, Texas county agency or official, or Texas municipality or official, any government records belonging to or pertaining to the Judgment Debtor, including financial and personal identifying information; 9) hire any person or company necessary to accomplish any right or power under this Order; 10) take all action necessary to gain access to all storage facilities, safety-deposit boxes, real property, and leased premises wherein any nonexempt property of the Judgment Debtor may be situated, and to review and obtain copies of all documents related to same; and 11) file any lawsuit necessary to seize or recover any nonexempt assets from any third parties who have acquired possession or control.

Copy from re:SearchTX

In addition to the powers of the Receiver set forth herein, the Receiver shall have the right, authority and power to request and obtain from the Judgment Debtor's attorney all files, correspondence, emails, records, papers and documents, whether paper or electronic, pertaining to Philip Floyd's ownership of any property or legal interest, or any negotiation of the purchase, sale, acquisition or creation of any property or legal interest. This order does not compel to provide any documents protected by the attorney-client privilege.

In addition to the powers of the Receiver set forth herein, the Receiver shall have the right, authority and power to request and obtain from providers of utilities, telecommunications, telephone, cell phone, cable, internet, data services, internet website hosts, satellite television services, and all similar services, (including Time Warner, AT&T, YouTube TV, Verizon, Sprint, Satellite TV, Direct TV, EV1, Google, Yahoo, and internet blogs and chat rooms) compelling the production of any information regarding the Judgment Debtor's payments, payment history and financial information, including account information, telephone numbers, names, service addresses, telephone numbers, IP addresses, call detail records, payment records, and bank and credit card information. This Order specifically serves as the court order required by 47 USC § 551, and satisfies all obligations of the responding party to obtain or receive a court order prior to disclosing material containing personally identifiable information of the subscriber and/or customer.

In addition, the Receiver shall have the authority to cooperate with and provide assistance to, as he deems best, to any law enforcement officer, official or grand jury to provide information or documents pertaining to any possible criminal act committed by Philip Floyd.

Further, the Receiver is authorized to seize all assets of which Philip Floyd is beneficiary of any trust for which no valid spendthrift provision applies. Any trustee holding money or

Copy from re:SearchTX

property for the benefit of Philip Floyd is ordered to turn such money or property over to the Receiver upon request by the Receiver or to deposit said funds into the Court's registry. Any financial institution holding money or property for any trustee for the benefit of Philip Floyd is ordered to turn such money or property over to the Receiver upon request by the Receiver or to deposit said funds into the Court's registry.

In addition, the Receiver is authorized to seize the membership interest of any Limited Liability Company in which Philip Floyd is a member, and to sell, manage, and operate the Limited Liability Company as the Receiver shall think appropriate. In addition, the Receiver is authorized to obtain all bank accounts and records and invest accounts and records held by Philip Floyd from any financial institution.

Any Sheriff or Constable, and their deputies, and any other peace officer, are hereby directed and ordered to assist the Receiver in carrying out his duties and exercising his powers hereunder and prevent any person from interfering with the Receiver in taking control and possession of the property of the Judgment Debtor, without the necessity of a Writ of Execution. The Receiver is also authorized to direct any Constable or Sheriff to seize and sell property under the Writ of Execution issued by this Court on April 1, 2023.

The Court authorizes and orders any Sheriff or Constable, and their deputies, and any other peace officer, to break and open any locks or gates erected by the Judgment Debtor as necessary to assist the Receiver and carry out this order.

In light of the circumstances of this case, the Court sets the bond at $100.00, *which shall be deposited into the Court's registry.*

The Receiver's fee is twenty-five percent (25%) of all gross proceeds coming into his possession, not to exceed twenty-five percent of the balance due on the judgment, plus any out-of-pocket expenses incurred by the Receiver in her scope as a receiver in this case. The Court finds

Order Appointing Receiver                                              Page 7 of 8

this a fair, reasonable and necessary fee for the Receiver and the Receiver is further directed and authorized to pay Judgment Creditors' attorney as Trustee for the Creditors the remaining seventy-five percent (75%) of all proceeds coming into Receiver's possession, with adjustment for Receiver's expenses as necessary. All Receiver's fees will be taxed as costs against the Debtor, which means that the Receiver is authorized to seek and recover 133% of the judgment plus expenses. All payments made by the Receiver to the Judgment Creditor shall be applied to the Judgment as a credit towards the balance of the Judgment.

The Receiver is further ordered to take the oath of her office.

SIGNED   6 - 9 - 23

**HON. JUDGE ANDREA BOURESSA**
471st District Court
Collin County, Texas

Copy from re:SearchTX

Filed: 8/8/2023 3:57 PM
Michael Gould
District Clerk
Collin County, Texas
By Jaclyn Grayson Deputy
Envelope ID: 78332709

CAUSE NO. 471-02423-2021

| | | |
|---|---|---|
| PHILIP FLOYD, | § | IN THE 471st JUDICIAL |
| | § | |
| *Plaintiff – Arbitration Respondent –* | § | |
| *Judgment Debtor,* | § | |
| | § | |
| v. | § | DISTRICT COURT |
| | § | |
| MMWKM ADVISORS, LLC, Series ERD I, | § | |
| and ELIAS DRAGON, | § | |
| | § | |
| *Defendants – Arbitration Claimants –* | § | COLLIN COUNTY, TEXAS |
| *Judgment Creditors.* | § | |

## <u>AMENDED ORDER APPOINTING RECEIVER</u>

CAME ON to be heard the Motion for Post-Judgment Receivership of Defendants – Arbitration Claimants – Judgment Creditors MMWKM Advisors, LLC, Series ERD I ("Creditors"); whereupon, the Court, after a review of the papers herein on file, became of the opinion that a Receiver should be appointed to take possession of and sell the leviable assets of Philip Floyd ("Judgment Debtor").

Based on the pleadings, the evidence and the argument of counsel, the Court finds that the Judgment Debtor owns non-exempt property, including but not limited to any rights to payments under the March 24, 2021 Investment Advisor Representative Agreement by and between Judgment Debtor and Worth Asset Management, LLC, and that there exists an unpaid final judgment against him. Notwithstanding any contrary language herein, this order does not compel turnover of Judgment Debtor's homestead or other exempt property.

IT IS THEREFORE, ORDERED, ADJUDGED, and DECREED by this Court that Mr. Seth Kretzer, Esq., 917 Franklin Street, Sixth Floor, Houston, Texas 77002, is hereby appointed Receiver in this case pursuant to the Texas Turnover Statute with the power and authority to take possession of and sell all leviable property of Judgment Debtor, including, but not limited to the

Amended Order Appointing Receiver                                    Page 1 of 9

Copy from re:SearchTX

following non-exempt property: (1) all documents or records, including financial records, related to such property that is in the actual or constructive possession or control of the Judgment Debtor; (2) all financial accounts (bank accounts), certificates of deposit, money-market accounts, accounts held by any third party; (3) all securities not held in retirement accounts; (4) all real property, equipment, vehicles, boats, and planes; (5) all safety deposit boxes or vaults; (6) all cash; (7) all negotiable instruments, including promissory notes, drafts, and checks; (8) all causes of action or choses of action; (9) all contract rights, whether present or future; and (10) all accounts receivable; and that all such property shall be held in *custodia legis* of said Receiver as of the date of this Order.

Judgment Debtor is **ORDERED** to turnover to the Receiver within ten (10) days from the Judgment Debtor's receipt of a copy of this Order: 1) the documents listed below, together with all documents and financial records which may be requested by the Receiver; 2) all checks, cash, securities (stocks and bonds) not held in retirement accounts, promissory notes, documents of title, and contracts owned by or in the name of the Judgment Debtor:

Any and all records, as hereinafter described, concerning affairs of the Judgment Debtors; unless otherwise noted, for the period January 1, 2020 through the present:

1. Monthly statements for every financial institution account in which Philip Floyd has been a signatory or owner since January 1, 2020;

2. Cancelled checks and wire transfers for every financial institution account in which Philip Floyd has been a signatory or owner since January 1, 2020;

3. Copies of the articles of incorporation, Secretary of State charters, operating agreements, membership agreements, and all documents of creation and ownership of any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity Philip Floyd currently holds or has held an interest since January 1, 2020;

4. Federal income and state franchise tax returns for Philip Floyd and any limited liability company, professional corporation, corporation, general

Amended Order Appointing Receiver                                      Page 2 of 9

Copy from re:SearchTX

partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

5.  All motor vehicle Certificates of Title owned or leased by Philip Floyd or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

6.  Stock certificates and bonds owned by Philip Floyd that are not held in a retirement account and any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

7.  Promissory notes owned by Philip Floyd or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

8.  Bills of sale owned by Philip Floyd or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

9.  Real property deeds and deeds of trust (regardless of date), owned or interest held by Philip Floyd or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

10. Business journals, ledgers, accounts payable and receivable files belonging to Philip Floyd or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

11. Pledges, security agreements and copies of financial statements owned by Philip Floyd or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

12. State sales tax reports filed by Philip Floyd or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

Amended Order Appointing Receiver                                    Page 3 of 9

Copy from re:SearchTX

13.  Any other record or document evidencing any ownership to real or personal property or to any debt owed or money had (regardless of date) owned or interest held by Philip Floyd or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

14.  All personal property returns filed with any taxing authority, including but not limited to any Central Appraisal District, filed by Philip Floyd or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020;

15.  All documents listing or summarizing property owned by or held by Philip Floyd or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity in which Philip Floyd currently holds or has held an interest since January 1, 2020; and

16.  Credit applications and other documents stating Philip Floyd's financial condition since January 1, 2020.

Judgment Debtor, Philip Floyd, is **ORDERED** to identify and turn over to the receiver all interests of the Judgment Debtor in any business or venture, including limited liability companies and limited partnerships, and all agreements, stock certificates and other documents pertaining to the Judgment Debtor's ownership in the business or venture. Judgment Debtor is **ORDERED** to continue, until the Judgment in this cause is fully paid, to turnover to the Receiver at the Receiver's address of 917 Franklin Street, Sixth Floor, Houston, Texas 77002, all checks, cash, securities, promissory notes, documents of title, and contracts (including but not limited to Investment Advisor Representative Agreements with Worth Asset Management, LLC, SEC#:801-122206) within three (3) days from the Judgment Debtor's receipt and possession of such property, if, as and when Judgment Debtor becomes in receipt and possession of any such property. Paychecks for current wages are exempt from this order.

In light of the refusal of Judgment Debtor to pay the judgment, the Receiver is authorized to provide notice of this order, or any discovery requests, or any other document or motion, to

Amended Order Appointing Receiver                                   Page 4 of 9

Copy from re:SearchTX

Judgment Debtor, by delivering such notice and order and discovery requests in any of the following manner: (1) to the Judgment Debtor's home address at by first-class U.S. Mail, without requiring signature or restricted delivery; (2) to Judgment Debtor's attorney, by fax, U.S. Mail or email, unless he or she indicates that he or she no longer represent the Judgment Debtor, or (3) by email to the Judgment Debtor's email address.

In addition to the powers of the Receiver set forth herein, the Receiver shall have the following rights, authority and powers with respect to the Judgment Debtor's property, to: 1) collect all accounts receivable of Judgment Debtor and all rents due to the Judgment Debtor from any tenant; 2) to change locks to all premises at which any nonexempt property is situated; 3) direct the delivery of Judgment Debtor's mail and the mail of any business of the Judgment Debtor to the Receiver's address and open all mail directed to Judgment Debtor and any business of the Judgment Debtor; 4) endorse and cash all checks and negotiable instruments payable to the Judgment Debtor, except paychecks for current wages; 5) hire a real estate broker to sell any real property and mineral interest belonging to the Judgment Debtor; 6) hire any person or company to move and store the property of the Judgment Debtor; 7) (but not the obligation) to insure any property belonging to the Judgment Debtor; 8) obtain from any financial institution, bank, credit union, credit bureau, savings and loan, title company, or any other third party, any financial records belonging to or pertaining to the Judgment Debtor; 9) obtain from any Texas state agency or official, Texas county agency or official, or Texas municipality or official, any government records belonging to or pertaining to the Judgment Debtor, including financial and personal identifying information; 10) hire any person or company necessary to accomplish any right or power under this Order; 11) take all action necessary to gain access to all storage facilities, safety-deposit boxes, real property, and leased premises wherein any nonexempt property of the Judgment Debtor may

Copy from re:SearchTX

be situated, and to review and obtain copies of all documents related to same; 12) file any lawsuit necessary to seize or recover any nonexempt assets from any third parties who have acquired possession or control; 13) direct Worth Asset Management, LLC (SEC#:801-122206), and any other party with whom Mr. Floyd ~~or any entity he controls~~ has any contractual rights to payments, to deliver to Receiver, at 917 Franklin Street, Sixth Floor, Houston, Texas 77002, all past and future records of payments to Mr. Floyd under the March 24, 2021 Investment Advisor Representative Agreement by and between Worth Asset Management, LLC and Mr. Floyd and such other payment records related to the same as Receiver shall request; and (14) direct Worth Asset Management, LLC (SEC#:801-122206), and any other party with whom Mr. Floyd ~~or any entity he controls~~ has any contractual rights to payments, to timely direct and make all future payments owed to Mr. Floyd under the March 24, 2021 Investment Advisor Representative Agreement when due under the terms of that Agreement (including Exhibit A thereof), directly to Receiver, at 917 Franklin Street, Sixth Floor, Houston, Texas 77002.

In addition to the powers of the Receiver set forth herein, the Receiver shall have the right, authority and power to request and obtain from the Judgment Debtor's attorney all files, correspondence, emails, records, papers and documents, whether paper or electronic, pertaining to Philip Floyd's ownership of any property or legal interest (e.g. contractual interest), or any negotiation of the purchase, sale, acquisition or creation of any property or legal interest. This order does not compel to provide any documents protected by the attorney-client privilege.

In addition to the powers of the Receiver set forth herein, the Receiver shall have the right, authority and power to request and obtain from providers of utilities, telecommunications, telephone, cell phone, cable, internet, data services, internet website hosts, satellite television services, and all similar services, (including Time Warner, AT&T, YouTube TV, Verizon, Sprint,

Copy from re:SearchTX

Satellite TV, Direct TV, EV1, Google, Yahoo, and internet blogs and chat rooms) compelling the production of any information regarding the Judgment Debtor's payments, payment history and financial information, including account information, telephone numbers, names, service addresses, telephone numbers, IP addresses, call detail records, payment records, and bank and credit card information. This Order specifically serves as the court order required by 47 USC § 551, and satisfies all obligations of the responding party to obtain or receive a court order prior to disclosing material containing personally identifiable information of the subscriber and/or customer.

In addition, the Receiver shall have the authority to cooperate with and provide assistance to, as he deems best, to any law enforcement officer, official or grand jury to provide information or documents pertaining to any possible criminal act committed by Philip Floyd.

Further, the Receiver is authorized to seize all assets of which Philip Floyd is beneficiary of any trust for which no valid spendthrift provision applies. Any trustee holding money or property for the benefit of Philip Floyd is ordered to turn such money or property over to the Receiver upon request by the Receiver or to deposit said funds into the Court's registry. Any financial institution holding money or property for any trustee for the benefit of Philip Floyd is ordered to turn such money or property over to the Receiver upon request by the Receiver or to deposit said funds into the Court's registry.

In addition, the Receiver is authorized to seize the membership interest of any Limited Liability Company in which Philip Floyd is a member, and to sell, manage, and operate the Limited Liability Company as the Receiver shall think appropriate. In addition, the Receiver is authorized to obtain all bank accounts and records and invest accounts and records held by Philip Floyd from any financial institution.

Copy from re:SearchTX

Any Sheriff or Constable, and their deputies, and any other peace officer, are hereby directed and ordered to assist the Receiver in carrying out his duties and exercising his powers hereunder and prevent any person from interfering with the Receiver in taking control and possession of the property of the Judgment Debtor, without the necessity of a Writ of Execution. The Receiver is also authorized to direct any Constable or Sheriff to seize and sell property under the Writ of Execution issued by this Court on September 7, 2022.

The Court authorizes and orders any Sheriff or Constable, and their deputies, and any other peace officer, to break and open any locks or gates erected by the Judgment Debtor as necessary to assist the Receiver and carry out this order.

In light of the circumstances of this case, the Court set the bond at $100.00, which was deposited into the Court's registry on June 9, 2023.

The Receiver's fee is twenty-five percent (25%) of all gross proceeds coming into his possession, not to exceed twenty-five percent of the balance due on the judgment, plus any out-of-pocket expenses incurred by the Receiver in his scope as a receiver in this case. The Court finds this a fair, reasonable and necessary fee for the Receiver and the Receiver is further directed and authorized to pay Judgment Creditors' attorney as Trustee for the Creditors the remaining seventy-five percent (75%) of all proceeds coming into Receiver's possession, with adjustment for Receiver's expenses as necessary. All Receiver's fees will be taxed as costs against the Debtor, which means that the Receiver is authorized to seek and recover 133% of the judgment plus expenses.  All payments made by the Receiver to the Judgment Creditor shall be applied to the Judgment as a credit towards the balance of the Judgment.

The Receiver took the oath of his office on June 9, 2023.

Copy from re:SearchTX

SIGNED _8/12/2023_____

_Andrea K. Bouressa_____
**HON. JUDGE ANDREA BOURESSA**
471st District Court
Collin County, Texas

**Agreed as to Form:**

_/s/ Seth Kretzer, Esq._          _/s/ Patrick Yarborough, Esq._

Seth Kretzer, Esq.          Patrick Yarborough, Esq.
Court-Appointed Receiver          Counsel for Judgment
          Creditors MMWKM
          Advisors, LLC, Series ERD I,
          and Elias Dragon

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Patrick Yarborough on behalf of Patrick Yarborough
Bar No. 24084129
patrick@fosteryarborough.com
Envelope ID: 78332709
Filing Code Description: Proposed Order
Filing Description: [Proposed] Amended Order Appointing Receiver
Status as of 8/14/2023 9:57 AM CST

Associated Case Party: Philip Floyd

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas T Floyd | | Lawyerfloyd@aol.com | 8/8/2023 5:37:39 PM | SENT |
| Gerrit M.Pronske | | gpronske@spencerfane.com | 8/8/2023 5:37:39 PM | SENT |
| Chad A.Norcross | | Chad.norcross@norcrosslaw.com | 8/8/2023 5:37:39 PM | SENT |

Associated Case Party: MMWKM Advisors, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ryan Hackney | | rhackney@azalaw.com | 8/8/2023 5:37:39 PM | SENT |
| Andrea Caswell | | acaswell@azalaw.com | 8/8/2023 5:37:39 PM | SENT |
| Tammi Byrd | | tbyrd@azalaw.com | 8/8/2023 5:37:39 PM | SENT |
| Tara Gaffney | | tgaffney@azalaw.com | 8/8/2023 5:37:39 PM | SENT |
| Alejandra Ramos | | aramos@azalaw.com | 8/8/2023 5:37:39 PM | SENT |
| Patrick Yarborough | | patrick@fosteryarborough.com | 8/8/2023 5:37:39 PM | SENT |
| Numera Dehri | | ndehri@azalaw.com | 8/8/2023 5:37:39 PM | SENT |
| Patrick Yarborough | | patrick@ecf.courtdrive.com | 8/8/2023 5:37:39 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Seth Kretzer | 24043764 | seth@kretzerfirm.com | 8/8/2023 5:37:39 PM | SENT |
| Jesseca Wilson | | jesseca@kretzerfirm.com | 8/8/2023 5:37:39 PM | SENT |

Filed: 2/21/2024 4:58 PM
Michael Gould
District Clerk
Collin County, Texas
By Tessa Castle Deputy
Envelope ID: 84745108

Cause No. 471-02423-2021

| | | |
|---|---|---|
| PHILIP FLOYD, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff – Judgment Debtor, | § | |
| | § | |
| v. | § | 471ST JUDICIAL DISTRICT |
| | § | |
| MMWKM ADVISORS, LLC, Series ERD, I, and ELIAS DRAGON, | § | |
| | § | |
| Defendants – Judgment Creditors. | § | COLLIN COUNTY, TEXAS |

---

## ORDER FOR TURNOVER OF $35,000 CHECK FROM AMERICAN GENERAL LIFE INSURANCE COMPANY

---

ON THIS DAY the Court considered the *Receiver's Motion for Turnover Order to Debtor Floyd,* and finds that Receiver, Seth Kretzer, is entitled to this *Order for Turnover.* The Court finds as follows:

Debtor Floyd possesses a check for $35,000 drawn on the account of American General Life Insurance Company.

This $35,000 check is a paid commission to Floyd which is not exempt and is subject to turnover. This finding is based upon the face of the document.

The Court declined Debtor Floyd's request for an evidentiary hearing to establish that the check should be otherwise characterized, based on the Court's determination that such evidence was not necessary and based on the history of delay tactics, misrepresentations, and lack of candor to the Court on behalf of Debtor Floyd.

Copy from re:SearchTX

Specifically, the Court received a "Notice of Stay" filed on behalf of Debtor Floyd which sought to invoke, unilaterally, an interlocutory stay based on Debtor Floyd's ongoing appeal of a post-judgment receivership order. Counsel offered no legal authority as to how a statutory stay of interlocutory orders was applicable to a post-judgment receivership order. The Court finds that counsel's objection to the hearing on that ground lacked any merit, and was made frivolously and groundlessly, for purposes of delay.

The Court further notes that Debtor Floyd made two alternative arguments for characterization of the check during today's hearing, neither of which being consistent with the representations of the same attorney in his written correspondence to opposing counsel about the check. Likewise, Debtor Floyd previously allowed a hearing to proceed concerning whether certain contractual payments were subject to the receivership order despite knowing that the contract at issue had already been re-negotiated by Debtor Floyd for the purpose of creating an employment relationship between the contracting parties for the benefit of Debtor Floyd, without mentioning such fact to the Court at the time of the hearing.

On such a history, the Court declined Debtor Floyd's request to offer testimony by Debtor Floyd to further change the characterization of money flowing to Debtor Floyd, and instead adopted the characterization of the check as represented on its face: a paid commission, which the Court finds is not exempt.

Copy from re:SearchTX

IT IS THEREFORE ORDERED that Receiver's Motion for Turnover Order to Debtor Floyd, LLC is GRANTED.

IT IS FURTHER ORDERED that Debtor Floyd shall deliver to Receiver the $35,000 check, fully endorsed, within three (3) business days of this Order, as required under the specific terms of the August 12, 2023 Amended Order Appointing Receiver.

SIGNED _February 21, 2024._

_Andrea Bouressa_

**HON. JUDGE ANDREA BOURESSA**
**471ST DISTRICT COURT**
**COLLIN COUNTY, TEXAS**

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 84745108
Filing Code Description: Court Action-Signed Order
Filing Description: Turnover
Status as of 2/22/2024 4:44 PM CST

Associated Case Party: Philip Floyd

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas TFloyd | | Lawyerfloyd@aol.com | 2/21/2024 1:58:55 PM | SENT |
| Gerrit M.Pronske | | gpronske@spencerfane.com | 2/21/2024 1:58:55 PM | SENT |
| Chad A.Norcross | | Chad.norcross@norcrosslaw.com | 2/21/2024 1:58:55 PM | SENT |

Associated Case Party: MMWKM Advisors, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ryan Hackney | | rhackney@azalaw.com | 2/21/2024 1:58:55 PM | SENT |
| Andrea Caswell | | acaswell@azalaw.com | 2/21/2024 1:58:55 PM | SENT |
| Tammi Byrd | | tbyrd@azalaw.com | 2/21/2024 1:58:55 PM | SENT |
| Lindie Johnston | | lindie@fosteryarborough.com | 2/21/2024 1:58:55 PM | SENT |
| Tara Gaffney | | tgaffney@azalaw.com | 2/21/2024 1:58:55 PM | SENT |
| Patrick Yarborough | | patrick@fosteryarborough.com | 2/21/2024 1:58:55 PM | SENT |
| Patrick Yarborough | | patrick@ecf.courtdrive.com | 2/21/2024 1:58:55 PM | SENT |
| Lauren L.Veillon | | Lauren@fosteryarborough.com | 2/21/2024 1:58:55 PM | ERROR |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Seth Kretzer | 24043764 | seth@kretzerfirm.com | 2/21/2024 1:58:55 PM | SENT |
| Alejandra Ramos | | aramos@azalaw.com | 2/21/2024 1:58:55 PM | SENT |
| Jesseca Wilson | | jesseca@kretzerfirm.com | 2/21/2024 1:58:55 PM | SENT |
| Numera Dehri | | ndehri@azalaw.com | 2/21/2024 1:58:55 PM | SENT |

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 84745108
Filing Code Description: Court Action-Signed Order
Filing Description: Turnover
Status as of 2/22/2024 4:44 PM CST

Associated Case Party: Seth Kretzer

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Dana E.Lipp | | dana@lipplegal.com | 2/21/2024 1:58:55 PM | SENT |

Copy from re:SearchTX

1                    REPORTER'S RECORD

2              COURT CAUSE NO. 471-02423-2021

3

4

5  PHILIP FLOYD,                ) IN THE DISTRICT COURT
                                )
6         Plaintiff,            )
                                )
7  VS.                          ) COLLIN COUNTY, TEXAS
                                )
8  MMWKM ADVISORS, LLC, and     )
   ELIAS DRAGON,                )
9                               )
          Defendants.           ) 471ST JUDICIAL DISTRICT
10

11

12

13  *********************************************************

14                        HEARING

15                   FEBRUARY 21, 2024

16  *********************************************************

17

18

19

20

21         On the 21st day of February, 2024, the following

22  proceedings came on to be held in the above-titled and

23  numbered cause before the Honorable Andrea Bouressa,

24  Presiding Judge, in McKinney, Collin County, Texas.

25  Proceedings reported by realtime machine shorthand.

                  Denise Carrillo, CSR, RMR, CRR
             Official Court Reporter - 471st District Court

1                    A P P E A R A N C E S

2   FOR THE PLAINTIFF:

3      MR. DOUGLAS T. FLOYD
       SBOT NO. 07181700
4      6521 Preston Road, Suite 100
       Plano, Texas 75024
5      Phone:  (972)378-3807
       Email: Lawyerfloyd@aol.com
6           -and-
       MR. CHAD A. NORCROSS
7      SBOT NO. 24039513
       Norcross Law
8      9288 Wichita Trail
       Frisco, Texas 75033
9      Phone:  (214)368-9300
       Email:  chad.norcross@norcrosslaw.com
10
    FOR THE DEFENDANTS:
11
       MR. PATRICK YARBOROUGH
12     SBOT NO. 24084129
       MS. LAUREN YARBOROUGH
13     SBOT NO. 24121181
       Foster Yarborough PLLC
14     917 Franklin Street, Suite 220
       Houston, Texas 77002
15     Phone:  (713)331-5254
       Email:  patrick@fosteryarborough.com
16

17  RECEIVER:

18     MR. SETH KRETZER
       SBOT NO. 24043764
19     The Law Offices of Seth Kretzer
       917 Franklin Street, 6th Floor
20     Houston, Texas 77002
       Phone:  (713)775-3050
21     Email: seth@kretzerfirm.com
            -and-
22     MS. DANA E. LIPP
       SBOT NO. 24050935
23     Lipp Legal, PLLC
       5301 Village Creek Drive, Suite A
24     Plano, Texas 75093
       Phone:  (512)775-3383
25     Email: dlipp@lipplegal.com

3

```
 1                              INDEX

 2                             HEARING

 3    February 21, 2024

 4                                              PAGE

 5    Caption ...........................................1

 6    Appearances........................................2

 7    Proceedings........................................4

 8    End of Proceedings................................29

 9    Reporter's Certificate ...........................30

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        **P R O C E E D I N G S**

2          (Wednesday, February 21, 2024, 10:31 a.m.)

3              **THE COURT:**  We'll go on the record in

4    Cause No. 471-02423-2021.

5              Who all do we have appearing this morning?

6              **MR. YARBOROUGH:**  Your Honor, Patrick

7    Yarborough and Lauren Yarborough here for judgment

8    creditors, MMWKM Advisors, Series ERD 1, and Elias

9    Dragon.

10             **MR. KRETZER:**  Good morning, Your Honor.

11   Seth Kretzer, court-appointed receiver.  And with me is

12   Ms. Dana Lipp, L-i-p-p.

13             **MR. FLOYD:**  Douglas Floyd for Philip

14   Floyd, Your Honor.

15             **MR. NORCROSS:**  Chad Norcross.  I'm

16   present.

17             **THE COURT:**  Mr. Norcross, you are

18   co-counsel for Philip Floyd?

19             **MR. NORCROSS:**  Yes.  I have been on the

20   case the whole time, but he's been doing all the work.

21             **THE COURT:**  Y'all can be seated.

22             Are there any appellate matters still

23   pending?

24             **MR. KRETZER:**  The Dallas Court of Appeals

25   affirmed last week.  I believe Mr. Floyd filed a

1    petition for either a panel rehearing or en banc
2    rehearing, but your order has been affirmed.
3                    THE COURT:  I'm sorry.  I didn't hear the
4    end of that.
5                    MR. KRETZER:  Your order has been
6    affirmed.  I believe Mr. Floyd has filed a petition
7    either for panel or en banc rehearing.  I don't recall.
8    But the turnover order itself was affirmed by an opinion
9    dated last week.
10                   MR. YARBOROUGH:  Yes, Your Honor.  I
11   believe it was dated February 12, 2024.  That was the
12   opinion affirming the receivership order.  And the
13   underlying final judgment also was affirmed in December
14   of 2023, the day after the December hearing in this
15   case.
16                   MR. KRETZER:  So to answer your question
17   directly, Your Honor, there is -- in the limited sense,
18   Mr. Floyd has the petition for rehearing pending, but
19   unless something happens there -- and then, of course,
20   the judgment was never superseded to begin with.
21                   THE COURT:  I am just trying to verify.  I
22   recall there being something about a stay.  And the stay
23   only applies to the trial; is that accurate?
24                   MR. NORCROSS:  Your Honor, Mr. Floyd's
25   hearing aid is not working.  So I am going to have to

```
 1    try to help him understand.  I don't think he heard you.
 2                  The judge wanted to know if there are any
 3    appellate matters pending.
 4                  MR. FLOYD:  Well, there is a motion for
 5    rehearing filed on the August 8th order -- or
 6    August 12th.
 7                  THE COURT:  Is that the receivership order
 8    or the judgment?
 9                  MR. FLOYD:  That's the receivership order.
10                  THE COURT:  Okay.  And so my follow-up
11    question is, then, the appellate stay that -- the 51.014
12    stay is only for a trial, correct?  It does not apply to
13    this proceeding?
14                  MR. FLOYD:  It does not apply to this
15    proceeding?  I'm not sure I understand the question.
16                  THE COURT:  Well, there was a filing of
17    some type of notice of stay, I thought.
18                  MR. FLOYD:  Well, I filed a notice of stay
19    under the -- automatic stay, that anytime a receiver is
20    appointed and an appeal is filed, there is an automatic
21    stay that goes in.  And I am going to renew my objection
22    to your overruling that stay.
23                  THE COURT:  Well, I haven't overruled the
24    stay.  That's why I am starting the hearing with that
25    issue.
```

1          MR. NORCROSS:  She wants to know if the
2    stay applies to the whole case or just to the trial.
3          MR. FLOYD:  It applies to anything the
4    receiver does.
5          THE COURT:  And what provision of the
6    statute are you relying on for that?
7          MR. FLOYD:  In the motion I filed.  I
8    don't recall right now.  I received an email from the
9    court coordinator that you had overruled that or were
10   not going to comply with that so --
11         MR. NORCROSS:  She said she hadn't ruled
12   on it yet.
13         MR. FLOYD:  It was my understanding that
14   the email said that you had already decided that it was
15   overruled.  So I just let that issue go until today.
16         THE COURT:  I believe the Court's
17   communication was that the parties should be prepared
18   for the hearing because I -- we don't typically cancel
19   hearings based on one party's unilateral assertion of a
20   stay.  So you can't unilaterally decide there's a stay
21   and cancel the hearings.
22         So what we do is we come to court, and we
23   talk about it, and then I decide whether or not I agree
24   with you as to whether there is a stay.  And I am asking
25   you if you have any statutory authority for the position

```
 1    that the stay of -- that the appeal of the receivership
 2    order stays all of the proceedings in the court, because
 3    as I read Section 51.014, which you cited in your
 4    notice, it states, "An interlocutory appeal under
 5    Subsection (a)(3), (5), (8), or (12) also stays all
 6    other proceedings in the trial court pending resolution
 7    of that appeal."  And a receivership order is (a)(1).
 8    It's not in that list.  So I am trying to find out what
 9    authority you have for the premise that all of the
10    proceedings are stayed in the absence of (a)(1) having
11    been included in that list.
12                 MR. FLOYD:  I did not understand that that
13    was the purpose of the hearing today.  I did not come
14    prepared to argue that.  I assumed, based on what I got,
15    what I received, that you did not agree with the motion,
16    and there was nothing that said we were setting it for
17    discussion today.
18                 THE COURT:  Well, just to be clear, the
19    Court does not resolve issues by email, and the Court
20    doesn't issue orders or make decisions by email.  So
21    when you file a notice of stay and you want to know if
22    your hearing is still going, it's still going until we
23    have a hearing about your notice of stay and whether or
24    not it's in effect.  So that's why we are starting there
25    today.
```

9

1              If the stay doesn't apply, then we move

2    forward with the hearing that was set.  If the stay does

3    apply, if I think you might be right, then we cancel the

4    rest of the hearing.  But I don't grant relief by email,

5    and I don't allow parties to unilaterally cancel

6    hearings just by filing a notice of stay.  That's not

7    how things work in this court.  Everyone gets an

8    opportunity to be heard.  So this is your opportunity to

9    argue why you think the hearing shouldn't go forward.

10             MR. FLOYD:  It is my interpretation under

11   the law, under that section, that it is an automatic

12   stay that remains in effect until there is a final

13   hearing on the issue of the receiver.  That's the only

14   argument that I can give since I was not prepared to do

15   that today.  I would have expended much more time

16   preparing for this if I had known that was the issue.

17   The issue today was solely the determination of a

18   particular check.  That's all that was set for today.

19   So I guess I misunderstood what was done back in -- when

20   I filed the notice of stay.

21             THE COURT:  Perhaps my court is different.

22   We don't typically allow folks to unilaterally cancel

23   hearings.  That's just not how we do things.  Everybody

24   gets the chance to be heard.  If you're not prepared to

25   go forward on your objection to the hearing today, then

```
 1   we're just going to move on to the hearing.
 2              MR. FLOYD:  I didn't catch the last word
 3   you said.
 4              THE COURT:  Okay.  If you are not prepared
 5   to go forward on your objection to the hearing, we will
 6   just go on to the hearing.
 7              MR. FLOYD:  Okay.
 8              THE COURT:  Okay.  So we'll start with the
 9   motion for turnover, then.
10              MR. FLOYD:  Are you overruling my
11   objection to having a hearing today?
12              THE COURT:  To the extent you haven't
13   already asserted it or -- you are telling me you are not
14   prepared to argue it.  I can't make heads or tails of
15   your position.
16              MR. FLOYD:  Well, I am objecting to having
17   a hearing today based on my interpretation of the law
18   that an automatic stay is in place.  That's my evidence.
19   That's my argument.  If you are overruling it --
20              THE COURT:  Are you telling me I am
21   reading the statute incorrectly when I read it verbatim
22   and it says that it only applies to Sections (a)(3),
23   (5), (8), or (12) and the receivership order is (a)(1)?
24              MR. FLOYD:  I am saying that the way I
25   read the statute, there's an automatic stay in effect.
```

1          **THE COURT:**  Okay.  Then your objection is
2     overruled, and we will move on to the motion for
3     turnover.
4          **MR. KRETZER:**  Judge, this is my motion for
5     turnover.  The basis is somewhat straightforward.  After
6     we were here, most recently, in January, the Friday of
7     that week, I received a letter from Mr. Floyd.  It's
8     found on Page 3 of the written motion.  And he attached
9     to that letter a check payable to Philip Floyd,
10    the judgment debtor, the exact amount of $35,000,
11    payable by the American General Life Insurance Company.
12          I would note, Judge, that the "Pay To The
13    Order" line, it lists Mr. Floyd's address at 16660
14    Dallas Parkway, which is the address of Worth Asset
15    Management, the CEO from whom you've heard previously.
16    And then, at the bottom of the check, it says
17    "Commissions:  Period ending January 12, 2024."
18          This is, obviously, not a wage.  Mr. Floyd
19    testified for several hours in December.  He is adamant,
20    passionate -- contrary to your prior ruling -- that he
21    is an employee of Worth Asset Management.  He never said
22    anything about being an employee of American General
23    Life Insurance Company.
24          This check, by its own words, says
25    "Commission."  There is, obviously, no FICA taxes, and

1  it's in the exact amount of $35,000.  This is,

2  obviously, an asset.  It cannot be a wage asset.

3        Mr. Floyd's letter, as we produced on

4  Page 2, Judge, proposed to put that money into the

5  registry of the court.  I don't think anyone can make a

6  deposit into the registry of a court without a court

7  order.  But my position would be this necessarily comes

8  within the ambit of the turnover order.

9        Mr. Floyd has testified in December in

10  this court, Judge, that he has no bank account.  He is

11  adamant that he simply takes the check he receives every

12  month from Worth Asset Management to the issuing bank --

13  I believe Legacy Bank here in Collin County -- and he

14  walks out with about $16,000 of cash.  That's how he has

15  been avoiding the turnover order with regard to the

16  payments from Worth Asset Management.  He gives this

17  money to his wife, and she pays their bills with it.

18        Putting all that to the side, Judge, here

19  we have a check from a completely different company.

20  He's never claimed to work there.  It says it's

21  commissions.  It's an exact amount.  There is no wage

22  withholding.  He doesn't work at American General Life

23  Insurance Company.  By every possible definition,

24  this is not a wage.  It's not even a wage under the

25  arguments they have maintained since last summer since

1   it does not come from Worth Asset Management.

2                For those reasons, Judge, I think instead

3   of putting this money into the registry of the court,

4   Debtor Floyd, who is here in the courtroom, should be

5   ordered to endorse the check and hand it to me, and I

6   will deposit it into my trust account, and it will be

7   the first payment that will have been made as a credit

8   against the judgment, which, of course, as we know, has

9   now been affirmed on appeal.

10               **THE COURT:**  All right.  And the response

11  on the motion to turn over.

12               **MR. FLOYD:**  Judge, we're opposed to the

13  turnover order because the particular check was issued

14  in error.  Mr. Floyd, Philip Floyd, is an employee of

15  WAM.  He was performing as his services for an employee

16  of WAM.  And the evidence will show that this is in the

17  normal course of his business that he handles when he

18  provides advice and counsel to clients as a financial

19  advisor.

20               One of the clients requested that an

21  annuity be set up from that client's account.  And

22  Mr. Floyd then, as an employee of WAM, contacted an

23  insurance company to issue an annuity in the amount of

24  $500,000, and they issued an annuity.  And, ordinarily,

25  the insurance company would send the check to WAM, but,

1   for some reason, it did not or they would not send it to
2   WAM.  It's a little more complicated.  The SEC
3   regulations have a little more complications in there.
4   They would send it to an intermediary, who would then
5   send it to WAM.
6             We're in a transition stage in the
7   technology.  This is normally done or often done
8   electronically.  In this case, an actual check was sent
9   to Mr. Floyd at his employment office, WAM, and I felt
10  that it was in -- we should, at least, advise the
11  receiver that he had mistakenly received a check.  It is
12  not his money.  It is earned income if it is his money,
13  in which case, if it is earned income, is subject to IRS
14  withholdings and other withholdings.
15            So there are two different issues here.
16  Either he is an employee -- which he is -- of WAM, and
17  the check was misdirected, and the wrong name was put on
18  it, and it should be turned over to WAM because it's
19  their money.  That's one issue.
20            The second issue, if you say, no, it
21  shouldn't be turned over to WAM, based on the evidence
22  of Mr. Floyd's testimony, it should be treated as some
23  other type of income, which I don't know what the
24  receiver is going to claim that other type of income is,
25  there is another class of income under 42.001(d) of the

1   Property Code that makes this payment for personal
2   services.
3                   So we have got these two issues.  In one
4   case, it is money that is owed to WAM.  It does not
5   belong to Mr. Floyd.  The other issue, if you determine
6   that it does not belong to WAM, then the alternative is
7   it's earned income under 42.001(d) and those are exempt
8   from seizure.
9                   MR. YARBOROUGH:  Your Honor, may I respond
10  briefly on behalf of judgment creditors?  I would like
11  to point out that -- and we submitted this as
12  Exhibit R-23 to continue the numbering that we have used
13  at past hearings.  This is yet another example, I
14  believe, Your Honor, of a heads-I-win-tails-you-lose
15  approach that we are seeing from the judgment debtor.
16  And by that, I mean that Mr. Floyd -- and I will present
17  this -- I've already handed a copy to the court
18  reporter, but if I may approach, I'll hand you R-23,
19  which has been filed and shared with opposing counsel.
20                  This, Your Honor, is a letter received
21  from Mr. Floyd, to the receiver, with judgment
22  creditor's counsel added, and it states that --
23                  MR. FLOYD:  Judge, I am going to object --
24                  THE COURT:  Just a moment.
25                  MR. YARBOROUGH:  It states, Your Honor --

1 this is a party admission.

2           THE COURT:  I have a copy of that attached

3 to the receiver's motion.

4           MR. YARBOROUGH:  Okay.

5           THE COURT:  It's the same exhibit.  So I

6 already have that in front of me.

7           MR. YARBOROUGH:  Okay.  And so, Your

8 Honor, this is a party admission --

9           MR. FLOYD:  Judge, I've objected.

10          MR. YARBOROUGH:  -- under the hearsay

11 exception for party admissions.

12          THE COURT:  Okay.  What is your objection,

13 Mr. Floyd?

14          MR. FLOYD:  My objection is two-fold, at

15 least.  That is communications between attorneys.  It's

16 like negotiations.  It is impermissible to bring in

17 communications between attorneys in a hearing.  In that

18 letter, I made a misstatement, slight misstatement, in

19 the way that it was worded, but the facts are the same.

20 I'm saying that the money is exempt money under the

21 Property Code.

22          THE COURT:  I'll overrule the objection.

23          You can continue, Counsel.

24          MR. YARBOROUGH:  Okay.  Your Honor, I am

25 not trying to play a game here.  I am just saying their

```
1    position has changed, as Mr. Floyd would like to tell
2    you first instead of allowing me to continue.
3              What we have here is a letter that states
4    that Mr. Floyd received a "paycheck for current wages
5    for a short term employment in December 2023." So in
6    this letter received from Attorney Floyd, Mr. Floyd is
7    claiming that this check was received as short-term
8    employment by American General Life Insurance Company.
9              The next sentence reads, "A client
10   requested Philip Floyd personally to purchase an annuity
11   as an agent and employee." So not only is this a
12   paycheck on behalf of a client who is -- for whom
13   Mr. Floyd was acting as an agent, an employee, a client
14   at Worth, but it's also a paycheck received from a third
15   party, American General Life Insurance Company.
16             It's just whatever is convenient from day
17   to day that we are hearing in this courtroom. And, Your
18   Honor, the thing that's difficult here is that Mr. Floyd
19   didn't even file a response. So we don't even have the
20   issues crystallized for your review. Fortunately, in
21   this case, there is no question that this check for the
22   round number of $35,000 is not wages.
23             You will hear evidence today -- which I
24   will not present until it's admitted -- that Mr. Floyd
25   actually holds, personally, insurance licenses with
```

1    multiple insurance companies and receives commission

2    checks when assisting clients and getting life insurance

3    annuities as an independent contractor.

4              This is absolutely within the four corners

5    of your order, and it just goes to show the difficulty

6    we're having when the ball and the goal posts keep

7    getting moved.  We have here a clear-cut case of a

8    check -- checks are covered by the receivership order --

9    which was issued to Mr. Floyd personally, for an amount

10   that is clearly within the ambit of your order.

11             And so the reason we're here today in

12   support of the receiver's motion is because we think

13   that this is clear-cut, and whether you issue an order

14   having this check endorsed and handed to the receiver or

15   put in the court registry with instructions to

16   distribute to the receiver and to judgment creditors, we

17   believe this issue is abundantly clear.  And we think

18   that the check and the representations made in this R-23

19   are party admissions that cannot be walked back.  And

20   for that reason, we may not even need testimony, though

21   we did secure Mr. Floyd -- Debtor Floyd's attendance

22   today in order to testify to clarify the issues, if

23   necessary.

24             **MR. KRETZER:**  If I could add one point,

25   Judge, just briefly.

 1              **THE COURT:**  Mr. Kretzer, if you'd pull

 2     that microphone closer, please.

 3              **MR. KRETZER:**  Oh.  I apologize.

 4              If I could just add one point briefly.

 5              Until Mr. Floyd talked about ten minutes

 6     ago, I had not heard anything about this mistaken check.

 7     That, I would suggest, Judge -- there is no evidence of

 8     this mistake, but that is a very serious allegation

 9     about the insurance company.  Insurance companies are

10     regulated entities.  I don't know that they send a lot

11     of checks in error.  I don't know that they would send a

12     lot of checks with the wrong payee on it.  For Mr. --

13     Attorney Floyd to say, oh, this money came in error and

14     should be put in the registry instead of alerting the

15     insurance company is even more serious.  That sounds

16     like taking of a property that would roughly -- rightly

17     belong to Worth Asset Management.  The reason they

18     didn't say anything about that in the letter and no one

19     said it -- didn't hear it until ten minutes ago is

20     because there is probably nothing to suggest that it is

21     in fact true.

22              But even if they are correct on that and

23     they have some evidence that somehow this insurance

24     company made this gigantic mistake, I don't know that

25     putting it in the registry would be the correct course

1    of action.  I think the reason Mr. Floyd had to send me
2    this letter is that his client has testified he has no
3    bank account.  The only way he gets money is to cash the
4    check from Worth at the source of their bank.  There is
5    no other bank that he can put this in unless he endorses
6    it to somebody.  That's why it has to come to the
7    receiver.  That's why he alerted me about it.
8              If the situation was really, oh, my God,
9    this insurance company made this horrible mistake and
10   they sent the check in error, they would have called the
11   insurance company and said, "You need to rescind this
12   check and reissue it to the right party."  That's not at
13   all what they did, Judge, and that's probably why no one
14   has heard of it until about ten minutes ago.
15             **THE COURT:**  Anything further, Mr. Floyd?
16             **MR. FLOYD:**  Judge, we sent them a copy of
17   the check almost immediately after we received it to put
18   them on notice that we got this check.  And that was
19   our -- what we believe -- Mr. Floyd believed was his
20   duty, to notify the receiver he has a check and that's
21   questionable.  That's all we're trying to do, is to
22   decide can he take it and send it back and get it issued
23   correctly so that his employer gets it.
24             We're in the middle.  We felt the
25   obligation to put everybody on notice as to what should

1    be done.  But I know what the receiver was going to do.

2    He's going to say, "Well, it belongs to me."  Well, if

3    it belongs to him and it's addressed to Mr. Floyd,

4    somebody has to pay taxes on it.  And those taxes -- if

5    this Court were to order that money turned over to the

6    receiver, Mr. Floyd is in criminal penalty for not

7    paying taxes on money he does not receive.

8              THE COURT:  Mr. Kretzer, could I ask for a

9    statutory citation to the provision that references the

10   exempt percentage of commissions.  I don't happen to

11   have it in front of me.

12             MR. KRETZER:  Sure.  It's in all three --

13   it's been in all three of his independent advisor

14   exhibits.  So that would be in R-1, the first one that

15   we had in 2021.  It was the same percentage in 2022 and

16   '23.

17             Do you have those?

18             MR. YARBOROUGH:  I don't think she's

19   asking that question.

20             MR. KRETZER:  Am I answering the right

21   question, Judge?

22             THE COURT:  I am just looking for the

23   statutory cite, if you know which section it is so I can

24   pull it up.

25             MR. KRETZER:  Oh.  I'm sorry.  I thought

```
 1   you meant the percentage of his recovery each month, the
 2   IAR.  The statutory cite for a percentage of --
 3                 THE COURT:  The exempt percentage of
 4   commissions.
 5                 MR. KRETZER:  Oh.  The exempt percentage
 6   of commissions.  Let me see if I can pull it in Westlaw.
 7   I don't have that in front of me.
 8                 MR. FLOYD:  Were you talking about
 9   42.001(d) of the Property Code?
10                 THE COURT:  Mr. Floyd has it.
11                 Thank you.
12                 So I'll hear arguments from counsel on, if
13   the Court takes the check at face value that it's a
14   commission, what portion of it, if any, is exempt under
15   Section 42.001 and the receivership order.
16                 MR. FLOYD:  Judge, if you are asking me,
17   I'll call Philip Floyd, and he'll testify on that
18   subject.
19                 THE COURT:  Well, I don't need legal
20   opinion -- or I don't need legal testimony.  I just need
21   counsels' opinions and arguments.  It's just applying
22   the law to the facts.  If this is a commission check for
23   $35,000 -- and it says on its face it's a commission
24   check -- what portion of it is exempt under 42.001?
25                 MR. FLOYD:  After the deduction of taxes,
```

1  $25,000 is exempt.  And the taxes are going to be around

2  14 -- I'm ready to put on evidence on that subject.  We

3  got it --

4             THE COURT:  It's not an evidentiary

5  question.  I don't believe we are going to need to hear

6  any testimony today.  I just need to know what

7  percentage or what portion of that check the parties

8  contend to be exempt.

9             MR. FLOYD:  The $35,000, there is,

10  roughly, 21 percent that is owed to WAM.  There is

11  $8,400 in taxes due.  There's Social Security taxes that

12  should be withheld from it of $4,340 and Medicare tax

13  withheld of $1,015.  The total withholdings from the 35-

14  is $21,105.

15             MR. NORCROSS:  The question is, if it's

16  commission --

17             MR. YARBOROUGH:  Your Honor, if I may?

18             MR. FLOYD:  I am getting to that.

19             THE COURT:  If you'll let Mr. Floyd

20  finish, and then I'll hear from the receiver.

21             MR. FLOYD:  That remains that Mr. Floyd

22  would receive $13,895.  He is entitled to a $25,000

23  protection under that section of the Property Code,

24  25 percent of a hundred thousand dollars.

25             THE COURT:  Okay.  And any contrary

1    position on behalf of the receiver or judgment creditor?

2              **MR. YARBOROUGH:**  Your Honor, I'll let the

3    receiver go next.  I think he is still doing some

4    statutory analysis.

5              The position of the judgment creditors,

6    Your Honor, is that if you make the determination that

7    only 25 percent of the $100,000 family limit, as set

8    forth in Subsection (a)(1) of this statute, applies,

9    then that also applies to every single check they

10   receive on a monthly basis because this is about

11   commissions received for personal services.  We do

12   not -- we take the position and we may need witness

13   testimony today to determine that these are not

14   commissions for personal services.

15             This is a sales commission made as an

16   independent contractor, not for personal services.

17   Mr. Floyd does not have hours to work for American

18   General Life Insurance Company.  Mr. Floyd does not have

19   times that he has to be in the office for American

20   General Life Insurance Company.  Mr. Floyd is

21   independent in how he performs the contractual duties

22   under their commission agreement.

23             Mr. Floyd does not have any indicia

24   whatsoever of receiving wages for personal services

25   here.  So we believe that this does not apply.  There is

1   no exemption that would apply to part of this check.
2   All 35,000 must be submitted to the receiver or, at a
3   minimum, the registry of the court.
4              That said, if Mr. Floyd's position is that
5   this exemption applies to all commissions -- and he is
6   repeatedly in this court, on the record, on hearing
7   transcripts, which we can cite chapter and versus, that
8   these are commissions.  So if he is saying that this
9   exemption applies, it also applies to every single one
10  of his monthly checks.  So he only gets a $25,000
11  exemption for his annual income from these monthly
12  checks he receives from Worth.  I don't think that's a
13  correct position.  I think it's all or nothing.  They're
14  either wages for personal services, like we say, or,
15  they're not -- like they say, or they're not.
16             Here, there is no question that Mr. Floyd
17  is not an employee.  He does not have a W-2.  He does
18  not have an agreement that makes him an employee, and he
19  does not meet any of the five *Limestone* factors for
20  being an employee of American General Life Insurance
21  Company.  For that reason, this is completely
22  non-exempt, and the entire thing should go to the
23  receivership.
24             MR. KRETZER:  Judge, Subsection (d) says,
25  specifically, unpaid commissions for personal services

```
 1    not to exceed 25 percent and so forth, and then it
 2    refers back to the beginning of this statute and
 3    Subsection (a).
 4              This is not an unpaid commission we're
 5    looking at here.  It's the complete opposite.  It's a
 6    paid commission.  They have necessarily written a check
 7    where they say they are paying the commission, as they
 8    themselves have stated it.  So I would argue this
 9    doesn't apply.  That would keep me, at most, from
10    going -- were American Insurance Company actually
11    Mr. Floyd's employer, then maybe I could only go to them
12    and request a certain amount of the unpaid commissions
13    be remitted directly.  That's the complete opposite of
14    what we have here.  They have already written the full
15    commission check.
16              The analysis -- this litany of numbers
17    that Mr. Floyd read off I don't think at all accords
18    with anything about what you've heard about the way he
19    is compensated.  They want -- Mr. Floyd wants to take a
20    certain amount of this money, send it to WAM and then
21    deduct taxes.  That's the complete opposite of what you
22    heard the CEO testify to.  Mr. Floyd's compensation,
23    under his independent advisor agreement, is he gets
24    80 percent of the -- 80 percent of the house's cut of
25    the assets under management each month.  We've never
```

```
 1   heard a word before about Mr. Floyd remitting money over
 2   to WAM and then taking out his taxes and then get
 3   something back.  That doesn't accord with any
 4   compensation formula we've ever heard about.
 5              So to answer your question directly,
 6   Judge, I think Subsection (d) says -- I quote -- "unpaid
 7   commissions for personal services."  We are not dealing
 8   here with an unpaid commission.  We are necessarily
 9   dealing here with a paid commission that takes the form
10   of this check.
11              THE COURT:  All right.  I'll pause you
12   there.
13              Mr. Floyd, do you have anything further
14   to --
15              MR. FLOYD:  Yes, Your Honor.  I want to
16   call Philip Floyd to testify.
17              THE COURT:  I'm going to deny that
18   request.  I don't believe that we need to hear evidence
19   on a legal question.
20              MR. FLOYD:  What is the legal question,
21   Your Honor, that you are being asked to answer?
22              THE COURT:  I am not here to answer your
23   question, sir.  Your tone and demeanor toward the Court
24   has been repeatedly, habitually disrespectful, and I
25   have tolerated it at every single hearing, but my
```

1   patience with that is at its limit.

2            **MR. FLOYD:**  Judge, if I've ever been

3   disrespectful, I sincerely apologize.  I have never, in

4   my knowledge, ever done or said anything in this

5   courtroom that I thought or intended to be

6   disrespectful.  I'm asking a simple question.  You are

7   stating there is a ruling as a matter of law.  I am

8   wanting to ask what is that ruling as a matter of law.

9            **THE COURT:**  I am ruling on the motion for

10  turnover as a matter of law.  If you have any further

11  argument to make, you can make it at this time.

12           **MR. FLOYD:**  Well, I disagree.  I object to

13  ruling on a matter of law because it's a matter of

14  evidence.  Facts have to be considered.  And the only

15  way the facts can come in is if we are allowed to call

16  the witnesses as to how this check came into being.

17           **THE COURT:**  And my ruling is that I am

18  overruling the request for an evidentiary hearing.  It

19  is based on the fact that, A, I don't think one is

20  appropriate on this record, and, B, I don't believe that

21  it's appropriate to expend court resources, given the

22  history of this case, given the fact that, just here

23  today, Mr. Floyd, I've heard you try to argue for an

24  interlocutory stay of a post-judgment receivership

25  order, an argument completely lacking in credibility.

1          We have previously had a hearing

2    concerning whether or not certain payments should fall

3    within the receivership order, and counsel for Mr. Floyd

4    failed to inform the Court that a new negotiated

5    contract had already been achieved at the time of that

6    hearing and that that hearing was a monumental waste of

7    the Court's time.  So we are not going to expend any

8    more court time or resources on what, essentially, is

9    now turning into a circus.

10          I am going to rule on the motion for

11   turnover as a matter of law.  If you have no further

12   arguments, we will conclude the hearing.

13          **MR. FLOYD:**  Before you sign any order, I

14   would like to see the order.

15          **THE COURT:**  Request denied.  I am going to

16   enter an order.  I'll sign an order, and you will see it

17   when it's entered.

18          We'll go off the record, and counsel is

19   excused.

20          (Proceedings were concluded at 11:03 a.m.)

21

22

23

24

25

1    STATE OF TEXAS

2    COUNTY OF COLLIN

3        I, Denise Carrillo, Official Court Reporter in and

4    for the 471st District Court of Collin, State of Texas,

5    do hereby certify that the above and foregoing contains

6    a true and correct transcription of all portions of

7    evidence and other proceedings requested in writing by

8    counsel for the parties to be included in this volume of

9    the Reporter's Record in the above-styled and numbered

10   cause, all of which occurred in open court or in

11   chambers and was reported by me.

12       I further certify that this Reporter's Record of

13   the proceedings truly and correctly reflects the

14   exhibits, if any, offered by the respective parties.

15       WITNESS MY OFFICIAL HAND this the 26th day of

16   February, 2024.

17                          /s/ Denise Carrillo
                            Denise Carrillo, CSR, RMR, CRR
18                          Texas CSR #9269
                            Official Court Reporter
19                          471st District Court
                            2100 Bloomdale Rd., Suite 30276
20                          McKinney, Texas 75071
                            Telephone:  972.547.1803
21                          dcarrillo@co.collin.tx.us
                            Expiration:  5/31/2024
22

23

24

25